## M'Cullough *against* Porter.

An agreement to place goods in the hands of an agent who at the time was insolvent, for the purpose of sale, upon the terms of his paying to his principal the invoice price of the goods and retaining the overplus for himself, is not fraudulent; nor does it vest in the agent such an interest in the goods as is the subject of levy and sale.

ERROR to the District Court of *Allegheny* county.

Porter and Cassidy against M'Cullough and Richardson. This was an action of trespass *de bonis asportatis.* The plaintiffs, merchants resident in Pittsburgh, entered into the following arrangement with William Alexander, of Beaver, for the sale of goods:

"*Pittsburgh, 30th August* 1839.

"Porter and Cassidy agree to consign to William Alexander groceries to the value of $     , to be sold by the said Alexander at not less than the invoice prices of the said goods. The invoice price of the said goods, when the same are sold, to be paid to the said Porter and Cassidy by the said Alexander; and all for which the said goods and merchandise may sell over and above the said invoice prices to be retained by the said Alexander for the support of himself and family. The goods remaining on hand or unsold to be returned by the said Alexander to the said Porter and Cassidy, and for the goods so returned he shall have a credit on the books of Porter and Cassidy."

In pursuance of this agreement, goods were put up and marked for William Alexander; and while they were upon the wharf, they were levied and sold by the defendants upon an execution against William Alexander. Whereupon this action was brought.

The defendants requested the court to charge the jury: 1. That if the jury believe the evidence, the agreement between plaintiffs and Alexander was in fraud of creditors, and therefore void, and the plaintiffs cannot recover. 2. That under the agreement there was such an interest in the goods in question in Alexander as was subject to levy and sale for his debts, and therefore the plaintiffs cannot recover.

The court, (Grier, President), answered both these points in the negative. The jury found a verdict for the plaintiff.

*Findlay*, for plaintiffs in error, in support of his propositions, cited 6 *Watts* 429.

*Lowry*, for defendant in error, cited 7 *Watts* 547.

IV. — 23

[M'Cullough v. Porter.]

The opinion of the Court was delivered by

Gibson, C. J.—A man may certainly give employment to a factor from motives of benevolence, and without an expectation of gain; but he cannot give him the substantial ownership of the goods without its burthens. Unless he retain the title with power to enforce it against the factor himself, he cannot enforce it against the factor's creditors: the goods fall into the mass of the factor's effects and are subject to make satisfaction for his debts, as if they had originally belonged to him. And this springs from the policy of the law which discourages every separation of the actual, from the apparent ownership of a chattel. The question then depends on the intention to retain or pass the property between the parties themselves, and not on the presence or absence of the word agent as an addition to the name of the consignee in marking the packages or casks, whose use is to set forth, not the nature of his title to them, but his address for the purpose of having them forwarded. What then was the contract? The plaintiffs simply agreed to consign goods to an insolvent friend, to be sold on their account for not less than the invoice prices; and the proceeds to the value of those prices were to be remitted to them, or the goods returned. Thus the excess of the sales over the invoice prices, was to be the amount of the commissions; and that it was to be contingent, is the only feature of the case which differs it from an ordinary consignment on commission. Hence it is urged, with apparent plausibility, that the same consequences would be produced by a sale. But at whose risk were the goods in the custody of the consignee? The very purpose of the arrangement was to protect them from his creditors; and to effect it, required that they should in reality be the property of the consignors, who must consequently have agreed in good faith to take upon themselves the risks incident to the ownership in order to carry out the plan. Had the goods been destroyed without the fault of the consignee, or sold to those who had become unable to pay for them, the consignors would have been liable to bear the loss: they would have been estopped from alleging the ownership to have been in the consignee by the very object and terms of the agreement, as well as by the stipulated right to put an end to the arrangement by returning the goods, which was rested on an evident supposition that the consignee was to be only an agent. If however the agreement was a trick to cover an understanding inconsistent with its terms, it might be fraudulent in fact; but to declare it so, would be the province of a jury. The opposite conclusion, merely as a legal inference, is to be drawn from the right to return the goods, which shows that the ownership of them was intended to remain in the consignors. Whether the agreement was merely colourable, was left to the jury; and the question of legal fraud was well decided. The only authority which might raise a doubt of it, is *Jenkins* v. *Eichelberger*, (4 *Watts* 121), which however is distinguishable

[M'Cullough v. Porter.]

from the case before us in regard to the object of the consignor, which was not to benefit the customer, but to sell the article and retain a lien on it severed from the possession, which the law abhors. The transaction was, in form and purpose, a sale at cost with interest at six months; and the stipulated right to have the hides returned to the vendor as leather to be sold by him, deducting from the proceeds the price of the raw material and five per cent. commission for guaranty, showed conclusively that they were to be sold as the property of the manufacturer. That stipulation was collateral to the contract of sale; and being executory also, it did not bind the property. But how different the circumstances of such a case, and a delivery avowedly to sell on a sliding commission! Were I to put my horse into the custody of a friend to be sold for a designated sum, with permission to retain whatever should be got beyond it, it would not be suspected that I had ceased to own him in the meantime, or that my friend would not be bound to return him, even without a stipulation, should he have failed to obtain the prescribed price. Yet stripped of its circumstances, that is exactly our case; in which it cannot be doubted that the ownership of the property at the time of the seizure, was in the plaintiffs.

Judgment affirmed.