## Rush *versus* Vought.

1. In a sheriff's interpleader where the property which consisted of many articles was claimed by the wife of the debtor, the court charged : " As your verdict must be a general one, either for the plaintiff or the defendants, it is incumbent on the plaintiff to make out title to *all* the property, otherwise she cannot have the verdict." *Held*, to be error.

2. When the evidence clearly shows a separate property in the wife, she is entitled to the benefit of its products and avails.

3. The wife was the owner of a farm as her separate property, the articles

[Rush *v.* Vought.]

levied on were products of the farm and articles purchased from them; the court charged: "The labor on the farm was bestowed by her husband and his children, and the grain, hay and other crops raised were the joint products of such labor and the land; and if the personal property now claimed by the wife was paid for out of the products, the husband had an interest in it. It cannot, therefore, be said to have been purchased and paid for out of the *separate* funds of the wife." *Held*, to be error.

4. The ownership of the farm carries with it, at law and in equity, the right to its products. No change can take place in the title to the fruits of the soil without the owner parts with his title or possession or permits its cultivation for the benefit of another.

5. The labor of others for the owner, though mingling in the production, creates no title to the product, whether the labor be that of the husband or another.

6. Equity will enforce a trust or a contract, but cannot create a title where none exists.

7. Creditors can work out equities only through the rights of the parties where there is no fraud.

8. A debtor cannot be compelled to labor for his creditors nor have they a remedy against his personal efforts.

9. A husband who is permitted, in the enjoyment of the marital relation, to live and be maintained upon the property of his wife, which she manages for her own use and benefit, does not acquire a title to the products merely by the labor which he voluntarily bestows upon it.

10. The minor children of the husband and wife, who were entitled by the terms of the deed to maintenance of the farm, might, with their father's assent, assist in the work on the farm without giving the husband any title to the products.

May 22d 1867.    Before WOODWARD, C. J., THOMPSON and AGNEW, JJ.  STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Somerset county.*

This was a feigned issue, under the Sheriff's Interpleader Act, to February Term 1867, to try the right to certain personal property levied upon by the sheriff under sundry executions as the property of Jacob Rush.

Ruth Rush, the wife of Jacob Rush, was the claimant and was made plaintiff in the issue, and Simon Vought and others, execution-creditors, were made defendants.

On the 29th of December 1840, Catharine Ogg, for good causes and considerations, "and especially for and in consideration of the natural love and affection I have for, and bear unto my daughter Ruth Rush, the wife of Jacob Rush, of William, and their children, and also for and in consideration of the sum of $1, have given, granted, &c., unto my said daughter Ruth Rush and her children by the said Jacob Rush, for her and their maintenance and support during her natural life, and from and after her decease to be equally the property of all of the children of the said Ruth by the said Jacob Rush that shall or may be then living, and the heirs (if any) of such as shall or may be deceased to take the share or dividend the deceased parent would have been entitled to if living at the time of distribution thereof—the following farm, consisting of four several tracts of land situate, &c.

    *          *          *          *          *          *

[Rush *v.* Vought.]

" To have and to hold the said farm, &c., unto my said daughter Ruth Rush and her children by the said Jacob Rush during my said daughter's natural life, and at, from and after her decease to the said children, their heirs and assigns, in equal shares, to be held in trust for them the said children, by their uncle, Jehu Rush, until they arrive at legal age, and to be by him attended to and managed to and for the only use, benefit and behoof of the said Ruth Rush and children of her and Jacob Rush, their heirs and assigns."

The deed was recorded January 2d 1841.

Up to 1860 the farm had been managed by the husband; at that time an execution against him was placed in the hands of the constable, and his personal property was levied on. Being less than $300 he retained it all under the Exemption Law.

To November Term 1866 and February Term 1867 sundry executions were issued against Jacob Rush, under which personal property valued at $1951.65 was levied upon. The property consisted of a number of cows and horses and other live-stock, hay and other farm produce, farming implements, household furniture, &c. It was admitted that two of the cows levied on belonged to Jacob Rush. He claimed and received $300, under the Exemption Law, out of these levies.

It appeared on the trial that in 1860 there were three boys and a girl, children of Jacob and Ruth Rush, at home, the oldest of whom, a boy, was fourteen to sixteen years old.

The evidence was that from that time Mrs. Rush and her boys carried on the farm, that she did the buying and selling, raised horses, cattle and sheep; that she had also a hired boy to assist her; that she made butter, worked in the harvest-field, &c. The father, mother and children lived on the farm together. There was also evidence that the husband sowed the grain, that the mother provided for the family, that the sons worked on the farm and the sister did housework; one of the boys testified that he got his clothes and board for his work on the farm, and that the larger part of the work was done by the family. There was also evidence that there were some valuable buildings put on the farm before the constable's levy, for some of which the husband contracted and for others the wife; part of their price was paid by the husband; it did not appear that any more had been paid for them than he had paid.

The plaintiff submitted the following points:—

1. The farm having been conclusively shown to belong to Mrs. Ruth Rush for the maintenance of herself and children, she is entitled to the rents, issues, profits and increase thereof.

2. That if the jury believe the goods and stocks levied on are the products and increase of the farm owned by Mrs. Rush, then the verdict must be for the plaintiff.

[Rush *v.* Vought.]

3. That if the jury believe that Mrs. Rush bought stock, with funds obtained from the pasture, feed and produce of the farm, and the stock levied on is the increase of such stock, it is hers, and the fact that her husband lived with her does not alter the case ; she having managed and carried on the farming operations in her own name for the last seven or eight years.

4. That if the jury believe the stock and goods were accumulated by the industry of the wife out of her own property, they are her own.

The court (King, P. J.) charged :—

" The question of fact submitted to your decision is, whether Ruth Rush, the plaintiff, is the owner of the property which was levied upon as the property of her husband on executions issued by the defendants.

" That the farm on which Jacob Rush and his family reside belongs to Mrs. Rush is not denied. Up to the year 1860 this farm was managed by the husband. In that year an execution was placed in the hands of a constable, and all his personal property was levied upon, but he was allowed to retain it under the Exemption Laws. How much of this property was included in the levy made by the sheriff does not appear, but it is admitted that two of the cows described in the levy belong to Jacob Rush.

" Since 1860 it is alleged, and pretty clearly proved, the farm was under the control and management of Mrs. Rush; but it is also proved that the work done upon it was chiefly performed by Jacob Rush and his family.

" It is not pretended that Mrs. Rush owned the property in dispute before her marriage, or that it accrued to her since her marriage by will or descent; but it is urged that it was purchased by her, and paid for out of the products and profits of her farm.

" In order to establish the right of a married woman to property purchased by her during coverture, it must be shown by ' full and clear' proof that it was paid for out of her separate funds ; where she purchases property the law presumes that she did so as the agent of her husband, and with means provided by him, and to repel the presumption the evidence must be explicit and satisfactory.

" We are asked to say, that as it is conclusively shown that the farm belongs to Mrs. Rush for life, for the maintenance of herself and children, she is entitled to the rents, issues, profits and increase thereof. [We think the rule to be correctly stated, but whether it is applicable to the facts of this case is somewhat doubtful. The labor on the farm was bestowed by her husband and his children, and the grain, hay and other crops raised were the joint products of such labor and the land ; and if the personal

[Rush v. Vought.]

property now claimed by the wife was paid for out of the products, the husband had an interest in it.] It cannot, therefore, be said to have been purchased and paid for out of the *separate* funds of the wife. When a married woman desires the protection of the Act of 1848, she must take care that her property has not been so mingled with that of her husband, as to render it almost impossible to distinguish between what belongs to the husband and what to the wife; and if she neglects this precaution she cannot complain that it has been seized by her husband's creditors.

" We are also requested to instruct you that if you believe the goods and stock levied on are the products and increase of Mrs. Rush's farm you must render a verdict for the plaintiff. If you ascertain that such products can be separated from the labor of the husband and his family the proposition might be sustained. This could readily be done if the wife's property had consisted of a store, as in the case of Wieman v. Anderson, 6 Wright 311, but how it can be done in this case, embarrassed as it is ' by the accident of the husband's joint possession, assistance and co-operation in carrying on the business' of the farm, we are at a loss to discover.

" The observations we have made in relation to the 1st and 2d points of the plaintiff, apply with equal force to the 3d and 4th points, and we need not repeat them.

" This issue was formed for the purpose of determining whether Mrs. Rush was the owner of certain articles of personal property, minutely set forth in her declaration. [As your verdict must be a general one, either for the plaintiff or the defendants, it is incumbent on the plaintiff to make out title to *all* the property, otherwise she cannot have the verdict."]

The verdict was for the defendants.

The plaintiff removed the case to the Supreme Court, and assigned for error the parts of the charge enclosed in brackets and that the court did not affirm her last three points.

*G. F. Baer*, for plaintiff in error, cited Garrison's Appeal, 2 Wright 533 ; Mellinger's Adm'rs. *v.* Bausman's Trustees, 9 Id. 522 ; Van Winkle *v.* Young & King, 1 Id. 216 ; Hoar *v.* Axe, 10 Harris 384 ; Manderback *v.* Mock, 5 Casey 47 ; Pettit *v.* Fretz's Ex'r., 9 Id. 118 ; Bear *v.* Bear, Id. 525 ; Rhoads *v.* Gordin, 2 Wright 279 ; Goff *v.* Nutall, 8 Id. 78 ; Hoffman *v.* Toner, 13 Id. 233 ; Baringer *v.* Stiver, 13 Id. 132 ; Gillespie *v.* Miller, 1 Id. 248 ; Jamison *v.* Brady, 6 S. & R. 466 ; Heck *v.* Clippenger, 5 Barr 388 ; Klick *v.* Devries, 14 Wright 267 ; Wieman *v.* Anderson, 6 Id. 314 ; Grabill *v.* Moyer, 9 Id. 530.

*A. J. Colborn*, for defendants in error, cited Garrison's Appeal, 2 Wright 533 ; Mellinger *v.* Bausman, 9 Id. 522 ; Van Winkle *v.* Young, 1 Id. 216 ; Gamber *v.* Gamber, 6 Harris 363 ; Keeney

[Rush *v.* Vought.]

*v.* Good, 9 Id. 349; Raybold *v.* Raybold, 8 Id. 308; Walker *v.* Reamy, 12 Casey 410; Stehman *v.* Huber, 9 Harris 260; Burson's Appeal, 10 Id. 164.

The opinion of the court was delivered, November 4th 1867, by AGNEW, J.—The court below seems to have fallen into several errors in this case.

The question on trial in the feigned issue was, whether the right of property in certain goods and chattels levied in execution, *or any of them*, was in Mrs. Rush. The court thought that, if she failed to establish her title to all of the numerous items in the sheriff's levy, a verdict must pass against her. This is hard law, and is not correct. Whatever weight an unfounded claim to a part might have with a jury, the law does not adopt it as conclusive against her whole claim. It would not be singular if in the course of five or six years' farming Mrs. Rush should be unable to show that some of the articles on the farm were purchased with the products of her land. The penalty is severe, that a failure as to some should be a forfeiture of all. The principle of this case is ruled by Van Winkle *v.* Young & King, 1 Wright 214. See also Garrison's Appeal, 2 Id. 531.

The learned judge erred also in his charge. He seems to have thought that, if the labor of her husband and children entered into the products of her farm in the least degree, there was such a mingling of interests, the whole was necessarily subjected to her husband's creditors. The stress laid, in many of our decisions, upon the necessity of a wife's proving fully, clearly and satisfactorily, that the purchase was made with her own means when she claims it as hers, seems to have led away the mind of the learned judge. We do hold the rule most stringently, and that even a purchase on credit or payment with her own labor will not avail. See Baringer *v.* Steiver, 13 Wright 129, and Flick *v.* Devries, 14 Id. 266, and cases there cited. As a rule of evidence, it is necessary to hold it firmly to prevent frauds by enabling a wife to become a receptacle for the property of her husband clandestinely thrown into her lap. But when the evidence clearly shows a separate property of the wife's own, as in this case, to refuse to give her the benefit of its products or avails, on slight and insufficient grounds, is to deny to her the rights of ownership and to expunge the statute which protects her use and enjoyment of it.

The undisputed evidence shows that the farm on which Mrs. Rush and her husband and children lived was conveyed to her by Catherine Ogg, her mother, for the maintenance of herself and her children by Jacob Rush during her lifetime, with remainder to these children at her death. The farm was a large one, having 100 acres cleared. Jacob Rush became insolvent in 1860, his property, less than $300 in value, being retained by him as ex-

empt from execution. Mrs. Rush, thereupon, took the entire management of the farm into her own hands, farming it chiefly by the labor of her children, her husband doing but little of the work. The testimony is that he generally sowed the grain. She bought and sold and traded with the produce of her farm, and the result of her management appears in the fact that after supporting the family and paying store bills, the property on the farm levied upon was appraised at $1651.65. A jury would have but little doubt, upon the evidence, that the horses, cattle, sheep and swine which stocked the land were the result of her purchases with the products of the farm and the increase therefrom.

All these were swept from Mrs. Rush by the application of a single principle, which the learned judge stated in these words: " The labor on the farm was bestowed by her husband and his children, and the grain, hay and other crops raised were the joint products of such labor and the land ; and if the personal property now claimed by the wife was paid for out of the products, the husband had an interest in it. It cannot, therefore, be said to have been purchased and paid for out of the *separate* funds of the wife." Thus, the sowing of the grain, which was Jacob Rush's chief labor, mingling with the tillage, carried away from Mrs. Rush not only all the products of the soil (hay as well as grain), but the stock purchased with their proceeds when converted by Mrs. Rush into money or bartered. A deduction which leads to such a wholesale destruction of a wife's rights of property, cannot be founded in correct principle. The error arose from an oversight of the true foundation of the wife's right. This is not the case of property purchased during coverture where the price of it presumptively, if not actually, came from the husband. But here the title to the products grows out of the title to the land itself. The ownership of the farm carries with it at law, and in equity, the right to its products. No change can take place in the title to the fruits of the soil without the owner parts with his title or possession, or permits its cultivation for the benefit of another. But the labor of others for the owner, though mingling in the production, creates no title to the products. The owner may be a debtor for the labor which tills his soil, or that labor may be given without a required equivalent, or for an equivalent in maintenance which is consumed in its use ; but this gives no usufruct or ownership in the product of the tillage. It matters not, therefore, whether the labor, when thus rendered, be that of the husband or another ; without a contract for the product or cultivation by the husband for himself, it confers no title or usufruct. In this case it will be remembered that the evidence shows that Mrs. Rush farmed and managed her own land and that her husband lived upon it, but as one of the family. Her estate being for life only, he had no title by curtesy, and he made no

[Rush *v.* Vought.]

pretence even to cultivate the land for himself.   It is not the case of a farm owned or cultivated by the husband, in whom, for the reasons already stated, the title to the products would vest.   The marital relation, therefore, in this case, gave the husband no ownership of the products of his wife's farm, merely because he assisted partly in its tillage, her use and enjoyment of the property being protected by the Act of 1848.

But it is said the labor of the husband belongs to his creditors, and it is the folly of the wife to suffer him to mingle it with the products of her property, and the creditor must be permitted in equity to follow it into these products, otherwise a fraud will be perpetrated.   This has several answers.   Equity will enforce a trust or a contract, but cannot create a title where none exists. The title to the products being a legal incident to the ownership of the land, equity cannot create another ownership contrary to the legal title, and against the intention of the parties.   Creditors can work out equities only through the rights of the parties where there is no fraud.   But here the wife was the owner in her own right, and the husband bargained for no title to the products in return for his services.   He had not even a lien.   He was a member of the family, lived with his wife upon her property, and enjoyed its benefits in the shape of a maintenance from it.   The marriage relation was not severed by her ownership of the property on which they lived, and which she devoted to the support of her husband and children.   The law favors rather than it discourages their joint occupation of it, in so far as it tends to preserve and fortify the marital relation.

The Act of 1848, which declares that a married woman's property shall be owned, used and enjoyed as her own separate property, was not intended to sever this relation in order to secure to her the benefits of her ownership.   As has been well shown in Walker *v.* Reamy, 12 Casey 410, and Manderback *v.* Mock, 5 Id. 43, there is a community of interest and possession of the wife's separate property, which the Act of 1848 does not forbid a wife to share with her husband.   But if the marriage relation were not so great a favorite of the law, and if equity would assume to protect the interests of creditors in the labor of the husband, evidently it has no rule by which to measure their rights in this case.   How is it possible to follow this labor into the several products of the farm, and to ascertain the proportion which has gone into each; and then to follow their proceeds after conversion into the stock purchased ?   Admitting that his labor could be valued in gross, yet how could it be apportioned to each product ?   The result of the doctrine of the court below was to forfeit the wife's title whenever the least portion of the husband's labor constituted a part, however small, of the cost of its production.   But this is contrary as well to the spirit of the marital

[*Rush v. Vought.*]

relation as to the doctrine that equity abhors penalties and forfeitures. In such a confusion of labor and product the wife's legal title must prevail.

There is another answer still more elemental. There is no law which compels a debtor to labor for his creditors, or gives them a remedy against his personal efforts. The slavery of person to the claims of creditors disappeared with the Non-Imprisonment Act of 1842. But even before that law, there was no known remedy enabling creditors to take the labor of their debtor and apply it to their debts. It could neither be seized nor attached. It is only when labor appears in the form of property it can be subjected to the payment of debts, if tangible to execution, or if in action to attachment. The farm laborer gains a debt for wages, but no title to the products of his work, and if he labors for his maintenance, which is consumed in the acquisition, his creditor has no remedy against the product. The latter cannot make a new contract for his debtor, nor compel the employer to deliver to him the products of his debtor's labor. It is clear, therefore, upon elementary principles, that a husband who is permitted, in the enjoyment of his marital relation, to live and be maintained upon the property of his wife, which she manages for her own use and benefit, does not acquire a title to the products of her farm merely by the labor which he voluntarily bestows upon it. There is a class of cases in this state of which the leading one is Holdship *v.* Patterson, 7 Watts 547, in which these principles are fully sustained. Gibson, C. J., there says: "The tangible earnings of the husband would be liable to execution, but he was not under even a moral obligation to restrict his efforts exclusively to the liquidation of them. He might lawfully devote himself to the maintenance of his family only." See also Manderback *v.* Mock, 5 Casey 43; Gillespie *v.* Miller, 1 Wright 247; McCullough *v.* Porter, 4 W. & S. 177; Keeny *v.* Good, 9 Harris 354.

But it is thought that the right of Jacob Rush to the services of his children, qualifies Mrs. Rush's right of property in the products of the farm. Addison Rush, a son, testifies that he got his clothes and boarding for his work; that his mother carried on the farm and supported the family. Indeed, all the witnesses testify that she managed the farm and provided for the family, and that the boys at home worked on the farm. Under the terms of the deed the children were entitled to their maintenance and support from the property during the life of their mother. There is, therefore, no reason that with their father's assent they should not assist to make that productive which was to furnish their own support. It is manifest that Jacob Rush did not dissent from the arrangement, but permitted his children to aid their mother in furnishing to them the support which it was his own duty to provide. He, therefore, relinquished his parental right to their labor.

The case, consequently, falls within the decision in McCloskey *v.* Cyphert, 3 Casey 220, in which it was held that a father may emancipate his son's labor and suffer it to go to the benefit of the son ; and it is said that he is not bound to work his children as he would a horse or a slave, for the benefit of his creditors.   But if there'were no evidence from which the jury might infer that Jacob Rush permitted his sons to labor for their mother and themselves, the same reasoning already used would apply to the title of the products of the farm in their case.   Their labor would confer no title upon him.   The right to the products would still follow the ownership and management of the land itself.   Equity would not interfere to invest Jacob Rush with a title in the products com- mensurate with the labor voluntarily bestowed by his sons in the tilling of the ground.

We think the court fell into a fundamental error which affected all its rulings, and the case should go back for another trial upon the principles indicated in this opinion.

Judgment reversed, and a *venire facias de novo* awarded.