## Enlow *versus* Klein.

1. Enlow agreed with Moritz to furnish him with a team of horses, wagons, &c., for country peddling; he to pay Enlow $5 per week, in two hundred payments; the team, &c., "to belong to and to be managed by Enlow, until the last of the two hundred payments;" Moritz to keep up all repairs, and if a horse should die to replace him at his own expense; Enlow "to relinquish all his right, &c., to Moritz when the last payment is made of the two hundred." *Held* to be a bailment.

2. The agreement did not create a present interest in Moritz, so as to make the property subject in his hands to his execution creditors.

3. Where by a contract the vendee receives a chattel to keep for a certain time, and to become the owner of it then, if he has paid the stipulated price, but if otherwise to pay for its use; the vendee receives it as bailee, and the property is not changed till the price is paid.[1]

4. Martin *v.* Mathiot, 14 S. & R. 214, distinguished.

November — 1875.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1875, No. 260.

This was a feigned issue, under the Sheriff's Interpleader Act, made up between A. W. Enlow, plaintiff, and Charles Klein, to try the title to certain chattels levied on as the property of Casper Moritz, under an execution issued against him by Klein; Enlow, the plaintiff in the issue, claiming that the property belonged to him.

Enlow was the owner of the goods on the 27th of July 1871, and on that day entered into the following agreement with Moritz:—

· * * * "The said A. W. Enlow, for the consideration hereinafter mentioned, doth agree to and with the said Moritz, by these presents, that he, the said Enlow, will furnish the said Moritz with a team of horses or mules, necessary wagons, gears, &c., necessary for country peddling.

"In consideration whereof, the said Moritz, &c., do covenant and agree to and with the said A. W. Enlow, by these presents, that he, the said Moritz, &c., shall and will pay to the said A. W. Enlow, weekly, the sum of five dollars, the first payment to commence on the 20th of July 1871, and to be divided into two hundred weekly payments, and the team and wagon and other fixings to belong to and be managed by the said A. W. Enlow until the last of the two hundred payments; furthermore, the said Moritz agrees to keep up all repairs, such as shoeing, mending harness, wagon, and in case a horse or mule dies to replace the same at his own expense.    Furthermore, the said A. W. Enlow agrees to relinquish all his right, &c., to the said team and fixtures for peddling to the said Moritz when the last payment is made of the said two hundred, and for the performance of all and every covenants afore-

---

[1] s. p. Crist *v.* Kleber, *antea*, p. 290.—REPORTER.

[Enlow v. Klein.]

said each of the said parties bindeth himself to the other in the penal sum of one hundred dollars."

On the 10th of June 1873, Moritz confessed a judgment to Klein for $327.40; an execution was issued to September Term 1873, and the goods in controversy, being two mules and harness, in the possession of Moritz under the foregoing agreement, were levied on, and upon the claim of Enlow that they belonged to him this issue was framed.

It was tried, November 17th 1874, before Stowe, J.

The plaintiff testified that $3 of the $5 per week were to go as payment of the goods, and $2 per week for their use; Moritz had paid him $210 up to May 26th 1872, and nothing since.

There was other evidence, on the question of payment in full by Moritz, and as to the ownership of the team, &c.

The court directed the jury to render a verdict for plaintiff, "subject to opinion of court on question of law reserved, as to whether the article of agreement in evidence between Enlow and Moritz was such as protected the property therein mentioned in the possession of Moritz from his execution-creditor, the plaintiff in this case, viz.: whether said agreement was a mere bailment, or a contract of sale."

The verdict was accordingly for the plaintiff. Judgment was afterwards entered on the verdict on the point reserved for the plaintiff. This was assigned for error by the defendant, on the removal of the record to the Supreme Court by writ of error.

*Carnahan & Miller*, for plaintiff in error.—This was a conditional sale to Moritz, and the goods were therefore liable to an execution against him: Rose *v.* Story, 1 Barr 190.

*F. M. Magee* and *T. M. Bayne*, for defendant in error.—Where there is a delivery of chattels on a bailment for a proper purpose, the property of the bailor will be protected against the creditors of the bailee: Myers *v.* Harvey, 2 Penna. R. 478; Becker *v.* Smith, 9 P. F. Smith 469; Clark *v.* Jack, 7 Watts 375; Rowe *v.* Sharp, 1 P. F. Smith 26; Henry *v.* Patterson, 7 Id. 346.

Mr. Justice WOODWARD delivered the opinion of the court, January 6th 1876.

While the agreement between Enlow, the plaintiff below, and Casper L. Moritz was in some respects awkwardly expressed, it can scarcely be treated as obscure. Enlow was to "furnish a team of horses or mules, wagons, gears, &c., necessary for country peddling," for which Moritz was to pay five dollars weekly until two hundred such payments should be made. Meantime the property was to "belong to and be managed by Enlow." It was then agreed that upon the receipt of the last of the weekly pay-

ments, Enlow should relinquish to Moritz his title to the property. On the part of the defendant below, it is insisted that the contract between these parties was a conditional sale, and not a bailment. And it is claimed that the question here is distinguishable from that presented in Rowe *v.* Sharpe, 1 P. F. Smith 26, because there the original owner had leased the property in terms, while in this case the agreement was to "furnish" only ; and because there the contract embraced a provision for the re-taking of possession by the owner, and a stipulation for the surrender of the property by the lessee, neither of which is contained in this agreement. ·

In the construction of this contract, as of all others, the intention of the parties is to be gathered from all its provisions. The use of such a word as "furnish," vague as it is in its signification, would leave the clause in which it occurs of ambiguous import if there were nothing beside to indicate the sense in which it was employed. It might imply a sale, a lease, a loan, a gift or a delivery of a chattel in payment of a debt, in accordance with its context and its subject-matter. As used here, it was the manifest intention of Enlow to place certain personal property belonging to him in the possession of Moritz, for the use of which weekly payments were to be made by the latter, and the ownership of which was to vest in him when, and only when, those weekly payments should have been made two hundred times. And it was the manifest intention of Moritz to receive the possession of the property on these precise conditions. The stipulation was expressed that until the payment of the last instalment, the team, wagon and fixtures were to "belong to and be managed by Enlow," and then, and not till then, his ownership was to be relinquished. No present interest was created in Moritz by this agreement so as to make the property subject in his hands to the claims of execution-creditors. This is not such a case as that of Martin *v.* Mathiot, 14 S. & R. 214, where possession was delivered to the vendee in pursuance of a sale actually made, with the condition added that the title to the chattels sold should remain in the vendor until the purchase-money should be paid. It is a case governed rather by the principle in accordance with which Rose *v.* Story, 1 Barr 190, was ruled, that "where by a contract the vendee receives a chattel which he is to keep for a certain period, and if in that time he pays for it the stipulated price, he is to become the owner, but if he does not pay the price, he is to pay for its use, the vendee receives it as bailee, and the right of property is not changed until the price is paid." This was the precise point decided in Clark *v.* Jack, 7 W. & S. 375, and the same principle has been recognised and enforced in the construction of contracts containing almost an infinite variety of phraseology, in a long line of authorities, embracing McCullough *v.* Porter, 4 W. & S. 177 ; Lehigh Co. *v.* Field, 8 Id. 232 ;

[Enlow v. Klein.]

Rowe v. Sharpe, *supra ;* Henry v. Patterson, 7 P. F. Smith 346, and Becker v. Smith, 9 Id. 469.

The failure in the agreement to give to Enlow express power to regain possession of the property, only left him to his adequate legal remedies; and a stipulation on the part of Moritz to surrender such possession would have had the effect neither to help nor hinder Enlow in the assertion and enforcement of his rights.

Judgment affirmed.