Rose et al. *v.* Story.

IN ERROR.

</div>

Where there has been an absolute sale of a chattel, and the possession has been delivered by the vendor to the vendee, the title passes to him; and it may be levied upon and sold as his property by his creditors, whether the price has been paid by him or not.

As between the vendor and vendee, on a verbal sale of a chattel and delivery of possession, and a fixed price to be paid on a certain day, but until paid the title to remain in the vendor; payment is a condition precedent, and, until made, the property is not vested in the vendee.

Where by the contract the vendee receives a chattel, which he is to keep for a certain period, and if in that time he pays for it the stipulated price, he is to become the owner; but if he do not pay the price, he is to pay for its use; the vendee receives it as a bailee, and the right of property is not changed until the price is paid.

Where there has been a conditional sale of a chattel, and delivery of possession to the vendee without the payment of the price to the vendor, it is liable to execution and sale by the creditors of the vendee.

If on a sale of a chattel it is agreed between the vendor and vendee, that the possession shall pass to the vendee, but the property to remain in the vendor until the whole price is paid to him; such agreement is fraudulent as regards the sheriff and the creditors of the vendee.

Where, however, the vendor refuses to part with the title to the chattel, but retains either its exclusive or joint possession, the law is otherwise; for in that case, the vendee is neither its real or apparent owner, and the vendor shall not be deprived of his property until he has received the whole stipulated price.

In such case, where the vendor has received a part of the stipulated price, the chattel may be sold by the creditors of the vendee; and the sheriff's vendee would be entitled to it on the payment to the vendor of that part of the price remaining unpaid.

The mere change of the mode of payment, or kind of work to be done in payment of a chattel, does not alter the effect of the contract of sale.

Where at the time of the seizure and sale of a chattel as the property of a vendee, where the sale to him was conditional, and where the vendor retained either the exclusive or joint possession of it, and had been paid a part of the price; as the vendor had the legal title to the chattel, and the vendee but an equity in it equal to the amount of money paid by him on the contract; the measure of damages to which the vendor would be entitled, as against the sheriff's vendee, would not be the value of the chattel itself, but the amount of the purchase money unpaid; and beyond this he could not recover, unless in cases of gross oppression or aggravation.

Where, from the evidence given on the trial, the case appears to be one proper for compensatory damages only, it is error in the court to charge the jury, that in addition to the value of the property, "they may give such further damages, as under all the circumstances of the case they may think the plaintiff entitled to;" as this leaves the jury without any rule whatever, and subjects the rights of the defendant to their arbitrary will.

Error to the Common Pleas of Tioga county.

This was an action of trespass brought by Petitiah P. Story, the defendant in error, who was plaintiff below, against Andrew Briggs, William Rose, Peter Backer, and Buel Baldwin, the plaintiffs in error, who were defendants below, to recover damages for taking and selling a span of horses claimed to be the property of the plaintiff.

On the trial of the cause in the court below, the plaintiff, who had a saw-mill, and was engaged in stocking it, after he had proved property in the horses, and the taking of them by the defendants, rested.

The defendants then gave in evidence the record of a judgment, on the docket of John N. Frost, a justice of the peace, in favour of William Rose, one of the defendants, against Elijah Cummings, entered July 26, 1841, for $30 and costs; also executions issued thereon, directed to the constable of Lawrence township; a levy on the horses in controversy; a receipt bond (as it was called) given by Story and Cummings to Andrew Briggs, the constable, for the delivery of the horses, and a return of the sale of the horses, to Buel Baldwin, on the 30th of April, 1842, for $40. This they followed up by evidence, that in the fall of 1842, the horses, by the direction of Story and Cummings, had been assessed in the name of the latter. They also gave in evi-

dence declarations of Story, intended to show, that he had sold the horses to Cummings. To rebut this evidence, the plaintiff proved that he had sold the horses to Cummings; that Cummings was to work for him by the month, until he had paid for them, at $20 per month, but that the horses were to remain the property of Story, the plaintiff, until they were paid for, and were to be kept at his barn, on the premises where he resided. There was also evidence given to show, that after this contract was entered into between Story and Cummings, a contract was made by Cummings and a certain Elias Daily, with Story, to haul logs for him, at one shilling a piece, from the foot of his roll-way to his saw-mill, and that they had drawn about three hundred logs; that they also, subsequently, made a contract with Story to stock his saw-mill at 20s. per thousand feet, to settle at the end of every month, and upon every settlement so to be made, part of the amount of money earned by and coming to Cummings, was to be applied towards payment of the horses. The horses were valued at $110; and although the evidence showed that a portion of the price of the horses had been paid by the work, labour, and services of Cummings, it did not distinctly appear how much had been paid. It was, however, clearly established, that Cummings used the horses in the business of Story, on the premises occupied by him, and kept them at his stable or barn from the time the contract was made up to the time of the sale, with the exception of a short time that they were kept at the stable of Daily, by his permission, granted at the request of Story.

The evidence having been closed, the counsel for the defendants requested the court to charge the jury on the following points:

1. "That under the evidence in this cause the plaintiff had not such possession of the horses, at the time of the levy and sale, as would enable him to maintain this action of trespass.

2. "That the contract of sale of the horses, from Story to Cummings, as given in evidence on part of plaintiff, although good between the parties, (Story and Cummings,) was fraudulent and void as against the creditors of Cummings.

3. "That, from all the evidence in this cause, defendants are entitled to a verdict."

The plaintiff's counsel also submitted to the court the following propositions, on which they requested the jury might be instructed:

1. "That if the jury believe, from the evidence, that by the terms of the contract between Story and Cummings, the horses, for which this suit is brought, were to remain the property of Story with a qualified delivery to Cummings, and to remain on the premises of Story until Cummings should pay one hundred dollars in drawing logs at $20 per

month; then the said contract, until the performance of its condition by Cummings, would not vest such an interest in Cummings as to subject it to levy and sale as his property.

2. "That the subsequent contract, as testified by Elias Daily, entered into by Cummings and Daily, to stock the mill at $2 50 per thousand, and to deliver logs from the foot of the roll-way at 1*s.* per log, in the absence of any agreement on the part of Story to relinquish his right of ownership in the horses, would not defeat the recovery of the plaintiff in this suit."

The court, (Conyngham, President,) after presenting the case to the jury, as a question of fact, depending upon the nature of the parol contract, charged, in answer to the points propounded, as follows:

"We cannot charge you as requested in the third point of the defendants.

"We decline also to charge you as requested in the first and second point of defendants. These points involve the decision of facts which we cannot make; but upon your decision of the facts, if you find the bargain to be of the character which defendants contend for before you, then these points would be truly stated. The plaintiff also asks us to charge you on two points. In relation to the first point, we say to you, that you are to judge from the whole evidence, and if you find the contract as stated here, and that it remained unperformed on the part of Cummings, the conclusion of law therein stated is correct. In relation to the second point; the mere change of the kind of work to be done, or mode of paying for the horses, they still continuing to be employed in the work and business of Story, would not alter the effect of the contract; and this point may be considered correctly stated. The cause must turn, as we have already stated to you, upon the character of the original contract, unless some other arrangement was made previous to the levy and sale, varying the contingent or conditional character of the original contract, if you so find it to have been. The question of fact is, then, whether at any time there was an absolute sale of the property to and taking possession by Cummings, Story merely reserving a lien for the price; if it were so, then the defendants are entitled to your verdict, but if there was merely a conditional sale, and qualified delivery of possession to be used in the work of Story, and this continued and unperformed to the time of sale, plaintiff would be entitled to recover.

If you do find for the plaintiff, he is entitled to recover, as the ordinary measure of damages, the value of the property taken and interest thereon, and such further amount as, under all the circumstances of the case, as argued by the counsel before you, you may think him entitled to demand, if any.

The defendant's counsel excepted to the charge of the court, who sealed a bill of exceptions.

The jury found a verdict for the plaintiff, whereupon the defendants took a writ of error and assigned the following errors in this court:

1. The court erred in their answer to the *first, second,* and *third* points put by defendant's counsel.

2. The court erred in their charge to the jury, on the *first* and *second* points submitted by plaintiff's counsel.

3. The court erred in that part of their general charge to the jury in which the jury are instructed as to the measure of damages they might give the plaintiff.

*Maynard,* for plaintiffs in error, in support of the errors assigned, cited Mathiot *v.* Martin, 14 Serg. & Rawle, 214 ; 4 Wash. C. C. R. 371 ; 1 Watts & Serg. 513 ; Clow *v.* Woods, 5 Serg. & Rawle, 273 ; Babb *v.* Clemson, 10 Serg. & Rawle, 419 ; 2 Whart. 302 ; 6 Watts, 419 ; 2 Watts & Serg. 150.  He contended that Cummings had control over the horses, and that the agreement was fraudulent.  That both had a right of property in them ; and that neither could maintain trespass for taking under an execution, and that this was a case for compensatory damages merely.

*Knox* and *White,* for the defendant in error.

The evidence of the plaintiff on the trial in the court below, established the fact, that the property in controversy belonged originally to Story, and this was not controverted by the defendants.  They alleged, that the contract between Story and Cummings was an absolute sale, and vested the right of property in Cummings : Story retaining a lien for the purchase money until paid.  We contended on the other hand, that it was a conditional sale ; and that the property and possession both were by the terms of the contract retained by Story, and that Cummings had only a qualified property and possession, which would have become absolute upon the performance of the conditions of sale.

But it is urged that the court erred in charging the jury that if they found for the paintiff, the measure of damages would be the value of the horses.

If the rule laid down in the cases of Clark *v.* Jack, 7 Watts, 375, and Myers *v.* Harvey, 2 Penna. R. 479, is recognised by the court, it is difficult to conceive how any deduction could be made from the value of the property or amount of payments made by Cummings. The ground on which the jury found for plaintiff, under the instructions

of the court, was, that Cummings had not such a property in the horses as would subject them to levy and sale, for his debts, and consequently had no such interest in them as would pass by the sale. It is equally difficult to conceive how the defendants would be trespassers if Cummings had such an interest as could be sold. It results as a necessary consequence, from the nature of the contract between Story and Cummings, that the latter could have no property in the horses until they were fully paid for. He was a mere bailee with a right to purchase, subject at all times to be defeated by his inability or neglect to comply with his contract, and without any legal claim on Story for any portion of the amount which he might advance, provided, the consummation of the purchase was not prevented by Story. Would the creditor of Cummings have any greater right? The contract and mode of payment was a beneficial one for Story, who had a right to insist upon its performance. Cummings himself would not rescind it without the consent of Story.

The opinion of the court was delivered by ROGERS, J.

The court we think was right in presenting the case as a question of fact, depending upon the nature of the parol contract. The property on which the levy was made, was, as is agreed on all hands, to belong to Story. It was sold by him to Cummings, and whether there was an absolute or conditional sale, whether the possession of the horses was delivered to Cummings, or retained by Story, raises the difficulty, on which the jury alone can decide. If there was an absolute sale, the title to the property having passed, it cannot be doubted the creditor had a right to sell it as the property of the vendee. But if, as the vendee contends, it was a conditional sale, or in other words, that it was agreed, that until the price was paid the title was to remain in the vendor, it would be otherwise. For as between the vendor and vendee on a verbal sale with delivery of a chattel at a fixed price, to be paid on a certain day, but until paid the title to remain in the seller, payment is a condition precedent, and until performance the property is not vested in the buyer. Vide Chitty on C. 391, in note, and the authorities there cited. So where one receives goods upon a contract, by which he is to keep them a certain period, and if in that time he pays for them, he is to become the owner, but otherwise he is to pay for the use of them, he receives them as a bailer, and the property in the goods is not charged until the price is paid. Sargent *v.* Giles, 8 N. Hamp. R. 325. Was it an absolute sale? if so, the title passes to the vendee. Was it a conditional sale? Then the title does not pass until payment, because the payment is a condition precedent, and

until performance, the title is not vested in the vendee. But suppose it be a conditional sale, and the chattel sold is delivered to the vendee without payment of the price, then, as is ruled in Martin *v.* Mathiot, 14 Serg. & Rawle, 214, it is liable to execution by the creditors of the vendee. For on a sale of chattels, if the vendor and vendee agree that the possession shall pass to the vendee, but the property remain in the vendor until the whole purchase money is paid, such agreement, as respects creditors and the sheriff, is fraudulent. By transferring the possession to the vendee under such a contract, a false credit is given to the vendee, and therefore in respects of third persons, as he is the apparent, so is he to be considered as the real owner. But the principle does not apply when, in addition to a refusal to part with the title until paid, the vendor retains either the exclusive or joint possession. In the latter case, the vendee is neither the apparent nor is he the real owner. The world has no reason to believe he is the owner, and therefore the vendor shall not be deprived of his property until he receive the whole of the stipulated price. The vendor retains such a right of possession as will enable him to maintain trespass. But what is the situation of the parties where the vendee has paid part of the price? Does he attain such an interest in the chattel as may be sold by his creditors? It seems to me that he does, and that when sold on execution, the vendee of the sheriff would be entitled to the chattel on payment of the price remaining unpaid. But here the defendants levied and sold the whole, instead of the equitable interest of the vendee acquired by payment of part of the price. If therefore the jury should believe that this was a conditional sale, that the stipulated price had not been paid, and that the vendor retained the possession or a joint possession of the horses, the plaintiffs have a cause of action. And to this effect the court instructed the jury. We also agree that the mere change of the kind of work to be done, or mode of paying for the horses, would not alter the effect of the contract. They still, as testified to by Daily, continued to be employed in the work and business of Story; and though they were for a short time transferred from the premises of Story, to Daily's stable, yet as it appears, it was at the request of Story, who may be considered as retaining a qualified possession, as before the removal.

If, then, the jury should decide, that the plaintiff is entitled to recover, the next question is, what is the measure of damages? The court instructed the jury, that if they found for the plaintiff, he is entitled, as the ordinary measure of damages, to the value of the property taken, and interest thereon, and such further damages as, under all the circumstances of the case, as argued by the counsel, you may think them en-

titled to demand, if any. From this instruction we entirely dissent. It appears in evidence, that the vendee had paid at least part of the price, and, so far as it appears to us, a considerable part of it. The vendor and vendee stand, therefore, in this position at the time of seizure and sale. The vendor had the legal title; the vendee an equity to the amount he had paid. But, by the instruction of the court, the vendor recovers not only the value of his own interest, but the interest of the vendee also. Now this cannot be, for the only just rule of compensation will be, to remunerate him for the amount of injury he has sustained, which is commensurate with his interest in the chattel. Beyond that, upon no principle of law or equity, is the jury permitted to go, unless in cases of gross oppression or aggravation, when the jury may mulct a party with vindictive damages. But this is a case for compensatory and not vindictive damages, as clearly appears from the evidence. We also think that the latter part of the instruction is highly objectionable. The court allows the jury to give such further damages as, under all the circumstances of the case, as argued by the counsel, they might think them entitled to demand. This is giving them a discretionary power, without stint or limit, highly dangerous to the rights of the defendant; it is leaving them without any rule whatever. The rights of the defendant are made to depend on the arbitrary will of the jury; of the effects of which this verdict presents a warning example.

Nothing appears which should swell the damages beyond the value of the interest which the vendee had in the property sold by the constable.

<div align="center">Judgment reversed, and a venire de novo awarded.</div>