JANUARY TERM, 1883.                    JANUARY 15, 1884.

# Dando *v.* Foulds.

An agreement set forth that the lessor agrees to lease to the lessee certain real estate for the term of a year, at the rental of a $1,000, payable in monthly portions in advance, and also agrees to lease the machinery on the premises for the same term, at the rent of $20 per week in advance. The lessor agrees to sell and deliver to the lessee such title as he possesses to the machinery at the expiration of the term for a cash sum. The lessee agrees that he will, at the expiration of the term, purchase the machinery, and pay in cash therefor the said sum, and further, that he will, upon thirty days' notice, purchase said machinery, and pay, at the expiration of the thirty days, the said cash sum. If either, at the expiration of the said lease, or prior thereto, upon the giving of such thirty days' notice, the lessee fails to comply with the agreement, the lessor may, at public or private sale, dispose

[Dando v. Foulds.]

of the said fixtures, and should there be any deficiency, the lessee should re-imburse the lessor for such difference and costs. *Held*, that the agreement constituted a bailment, and not a conditional sale, and that the lessee was a bailee with an option to purchase.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to the Court of Common Pleas, No. 3, of *Philadelphia County.*

Sheriff's interpleader between Henry Foulds, claimant, as plaintiff, and Thomas S. Dando, an execution creditor of C. Dorwin Freeman, as defendant, to determine the ownership of machinery and goods alleged to have been leased by Foulds to Freeman.

The facts, as they appeared at the trial of the feigned issue, January 11, 1883, before LUDLOW, P. J., were as follows:

On September 7, 1882, Thomas S. Dando obtained judgment against C. Dorwin Freeman for $129 33. On the same day he levied on the machinery in Freeman's printing establishment, at 306 and 308 Chestnut street. The property levied on was claimed by Henry Foulds, and an issue was framed. Foulds put in evidence the following agreement:

"The said Henry Foulds hereby agrees to lease unto the said Dorwin Freeman the premises, third story of building 306 and 308 Chestnut street, for the term of one year, from the first day of January next, at the rental of $1,000, payable in monthly portions in advance, and also agrees to lease unto the said Dorwin Freeman the machinery now on said premises, being the same this day purchased from Emma Chandler, for the said term of one year from the date hereinbefore mentioned, at the rental of $20 per week, payable in advance.

Further, the said Henry Foulds hereby covenants and agrees to sell and deliver unto the said Dorwin Freeman such title as he may now possess to said machinery, stock, and fixtures now upon said premises, at the expiration of said term, for the price or sum of $3,700 in cash.

In consideration whereof, the said Dorwin Freeman hereby covenants, promises, and agrees to, and with said Henry Foulds, that he, said Freeman, will, at the expiration of the said lease, purchase said machinery, stock, and fixtures from said Henry Foulds, and that he will pay him in cash therefor the sum of $3,700, the said Dorwin Freeman hereby agreeing to take the same title thereto as now held by said Henry Foulds.

[Dando *v.* Foulds.]

The said Dorwin Freeman hereby further covenants and agrees that he will, upon thirty days' notice received from said Foulds, purchase said machinery, stock, and fixtures, and pay, at the expiration of said thirty days' notice, to the said Henry Foulds, the said sum of $3,700.

And it is hereby agreed further, that if either, at the expiration of said lease or prior thereto, upon the giving by said Foulds of such thirty days' notice, he, said Freeman, fails to comply with said agreement, that said Foulds may, either at public or private sale, dispose of said stock and fixtures for the best price to be obtained therefor, and that should there be any deficiency between the sum realized and the said amount of $3,700, that he, said Dorwin Freeman, should re-imburse and indemnify said Henry Foulds for such difference, together with all costs entailed by such proceedings."

The agreement then provided for security to be given by Freeman.

There was executed contemporaneously with this agreement a lease in the regular form, of the same stock, machinery, and fixtures for the same term and at the same rental, but containing no agreement to purchase.

The testimony showed that in November, 1881, Foulds purchased the machinery mentioned in the lease from the Chandler estate, and had leased the premises in which the machinery was placed from the Girard estate, for $1,000 a year.

The Court charged the jury as follows:

"Gentlemen of the jury, I am satisfied that the agreement between Foulds and Freeman in reference to this machinery constitutes a bailment, and not a conditional sale."

January 11, 1883, verdict for plaintiff, on which judgment was subsequently entered.

The defendant, in the feigned issue, thereupon took this writ, assigning for error the charge of the Court as above.

*E. F. Hoffman* for plaintiff in error.

The agreement was a sale from Foulds to Freeman, giving one year's credit, charging a most exorbitant interest, and securing the vendor by attempting to create a sort of chattel mortgage of the machinery: Benjamin *v.* Sales, 8 Am. Ed., 5; Brunswick *v.* Hoover, 95 Pa. St., 508; Heryford *v.* Davis, 12 Otto, 235; Krause *v.* Commonwealth, 93 Pa. St., 418.

[Dando v. Foulds.] ·

*Frank S. Christian* for defendant in error.

The contract was a lease: Myers *v.* Harvey, 2 P. & W., 478.

The fact that a lease does not provide for a return of goods is immaterial: Enlow *v.* Klein, 29 Smith, 490; Clark *v.* Jack, 7 Watts, 375; Fitler *v.* Maitland, 5 W. & S., 309; Chamberlain *v.* Smith, 8 Wright, 431; Lehigh Coal Company *v.* Field, 8 W. & S., 232; Henry *v.* Patterson, 7 Smith, 347; Becker *v.* Smith, 9 Smith, 469. ·

February 4, 1884, the opinion of the Court was delivered by GORDON, J.:

The single assignment of error in this case is to that part of the charge of the Court below in which the jury were instructed that the agreement between Foulds and Freeman, in reference to the machinery, stock, and fixtures, constituted a bailment, and not a conditional sale. We have, then, to consider the character and effect of the contract of the parties above mentioned, executed on the 18th of November, 1881. Was this contract in effect such a conditional sale of the property therein mentioned as vested a present title thereto in Dorwin Freeman? If it did so operate, it was fraudulent as to creditors, however good it might be between the parties themselves. It is to be observed that to bring the case within the statute of Elizabeth, the contract must vest presently a title of some kind in the buyer, and the mere right to acquire the title at some future time, or upon the happening of some future contingency, will not have that effect: Rose *v.* Story, 1 Barr, 190. In other words, the title to the goods must pass to the vendee at the time he receives the possession, otherwise there is no sale, but only a bailment. We must, then, look to see how, under the contracts before us, Freeman received the goods in controversy, and this depends largely upon the character of his original possession, for if his title was not that of a vendee when he went into possession, it is very certain that he has acquired no such title since that time, for it is not pretended that he complied with the conditions necessary to vest him with such title. But we have here, in the fore-front of the agreement, a lease, first, of the building at an annual rental of one-thousand dollars, and, second, of the personalty in controversy at a rent of twenty dollars a week, and we also have separately a contemporaneous lease of what appears to be the same machinery, stock, and fixtures, for the same term and for the same rent per week, and in this instrument there is no condi-

[Dando *v*. Foulds.]

tion for purchase, but it is, in all respects, a regular lease. Again, Foulds covenanted, in the agreement first above mentioned, to sell to Freeman this machinery, stock, and fixtures, at the expiration of the lease, for the sum of $3,700, and, on the other hand, Freeman agreed that at that time he would, at the price mentioned, buy the said property, and further, that he would purchase and pay for the same at any time, on thirty days' notice from Foulds. But in all this we discover no intention to vest title in Freeman at the time of the execution of the agreement. His possession is to be only that of a tenant or bailee, and, except at the will of the lessor, he has no right to purchase until the expiration of the lease. But it is urged that, by the terms of the contract, Foulds could only compel Freeman to buy after thirty days' notice, but that in default of his so doing, he might sell the goods, as it were, on Freeman's account, and charge him with any deficiency in the price. This, however, only amounts to an option in Foulds to determine the lease as to the personalty on a thirty days' notice, and to treat the property as though owned by Freeman. But this option on the part of the lessor, except merely in the matter of time, does not alter the nature of the contract, and the balance is but a method of compelling performance, and the determination of the measure of damages in case of non-performance. Strike this all out, and nothing has been materially altered except to deprive the lessor of his option to call upon the lessee to perform his covenant before the expiration of the lease. But it still remains that he is bound to purchase at the end of the term, and if he does not do so, he must answer for his breach of the contract in damages. But what difference in principle can it make that the lease might be determined in thirty days rather than in one year? It was still a lease, and if Freeman got the possession of the goods under it, he held, not as owner, but as a lessee or hirer. Thus, in the absence of all oral evidence to prove an intent to hinder, delay, or defraud creditors, held, as we are, to the letter of the papers before us, we cannot presume that the parties intended anything other than that which is expressed in their contract; that is, that Freeman held the goods in controversy only as bailee, with an option to purchase, which he never exercised.

The judgment is affirmed.