General Motors Acceptance Corporation v.
Baltimore and Ohio Railroad Company,
Appellant.

94

Argued April 23, 1929.

Before Trexler, Keller, Gaw-
throp, Cunningham and Baldrige, JJ.

*William H. Eckert,* and with him *Smith, Buchanan, Scott & Gordon,* for appellant.—One who has the title to a chattel for the sole purpose of securing the payment of a sum of money by installments cannot recover in an action for the conversion of that chattel more than the amount of money still due him: Rose v. Story, 1 Pa. 190; Harkness v. Russell, 118 U. S. 663, 30 L. Ed. 285; Martin v. Mathiot, 14 S. & R. 214; Johnston v. Whittemore et al., 27 Mich. 463; Lacey v. Great Northern Ry. Co., 70 Mont. 346, 225 Pac. 808; McCrosson v. Reilly, 33 Pa. Superior Ct. 628.

*Wilbur F. Galbraith,* and with him *Anne X. Alpern,* of *Cunningham, Galbraith & Dickson,* for appellee.— The bailor of an automobile, in the event of its destruction by a third party, can recover the market value of the car at the time of its destruction: Elder v. Woodruff Hardware Co., 71 S. E. 806; Wharer v. O'Connor, 204 Ill. App. 330; Perrott v. Shearer, 17 Mich. 48; Criez v. Sunset Motor Co., 123 Wash. 604, 32 A. L. R. 627.

The contributory negligence of a bailee cannot be imputed to the bailor so as to bar recovery by it: Morgan County v. Payne, 207 Alabama 673; Patrick Cain v. Wickens, New Hamp. Supreme Court 1923, 122 At. 800; Forks Township v. King, 84 Pa. 230; United Motor Finance v. Quaker City Cab Co., 82 Pa. Superior Ct. 272; Fischer v. International Railway Co., 182 N. Y. 313.

Opinion by Cunningham, J., July 2, 1929:

Appellant, a railroad company, was defendant in an action of trespass brought in the county court of Allegheny County by General Motors Acceptance Corporation, appellee herein, in which it was charged that a

Chevrolet automobile had been totally destroyed as a result of the negligent operation of a train over one of its grade crossings. From the judgment entered upon the verdict against it in the county court appellant sought to appeal to the common pleas of that county and, under the Act of May 5, 1911, P. L. 198, as amended by the Act of April 9, 1915, P. L. 48, obtained a rule upon appellee to show cause why an appeal should not be allowed or the county court directed to enter judgment in appellant's favor upon the whole record. This appeal is from the order of the common pleas dismissing the petition and discharging the rule. As the case was tried in the county court appellant was not entitled, under all the evidence, to binding instructions, and the refusal of the common pleas to direct that court to enter judgment in its favor upon the whole record was clearly right. The grounds upon which it is now contended an appeal should have been allowed are found in alleged errors of the trial judge in answering certain points submitted by appellee. Under appellant's statement of the questions involved upon this appeal, the contention (urged in the county court) that the evidence was insufficient to sustain the finding of the jury that appellant had been negligent is abandoned, and we, therefore, assume its negligence.

The facts out of which the legal propositions here involved arose may be thus condensed: On September 18, 1926, Howard A. Betz obtained possession of the automobile from Schade Brothers, automobile dealers, under a contract in writing designated by the parties a "lease," and the dealers forthwith assigned to General Motors Acceptance Corporation all their interest therein. The consideration was called a "rental;" it amounted to $887 and was to be paid within a year and in payments thus specified: "$276 on or before de-

livery leaving a deferred rental of $611 payable at the office of General Motors Acceptance Corporation in twelve [monthly] installments of $50.91 each.'' By the terms of the contract Betz agreed to surrender the car ''at the expiration of [the] lease,'' but was given an option to ''purchase'' it, at the end of the term, for one dollar, provided he had fully performed his part of the agreement. He made all payments due up to October 27, 1926, the date of the accident in which the car was demolished; at that time the unpaid rentals aggregated $560.09 and the undisputed evidence was that the car then had a market value of $725. This figure, as we understand it, represents the full market value of the car considered as an article of personal property and regardless of the effect of any options to purchase it then outstanding. The car was registered in the office of the Pennsylvania Department of Highways in the name of Betz, as owner, subject to an encumbrance of $611 in favor of the Acceptance Corporation, but this registration had no controlling effect upon the rights of appellee: Braham and Co. v. Steinard-Hannon Motor Co., 97 Pa. Superior Ct. 19.

Two actions were instituted simultaneously in the county court against appellant: one by Betz and the other by General Motors Acceptance Corporation; Betz claimed for the full value of the car and the Acceptance Corporation claimed in its statement $560.09, the above mentioned aggregate of the unpaid payments, and described this amount as ''its interest'' in the car. The cases were tried together; a verdict was directed in favor of appellant in the one in which Betz was plaintiff upon the ground that the evidence showed that he had been guilty of contributory negligence as a matter of law; the action in which General Motors Acceptance Corporation was plaintiff was submitted to the jury.

No effort was made by Betz to appeal his case. In the action brought by General Motors Acceptance Corporation the trial judge, in answering its points, instructed the jury, in effect, that if the collision "resulted from the joint negligence" of Betz and appellant the negligence of Betz could not be imputed to General Motors Acceptance Corporation. Another point affirmed read: "If the jury find in favor of the General Motors Acceptance Corporation, it has a right to recover the full market value of the automobile at the time of the collision." A verdict was returned for appellee in the sum of $725, the market value of the car, and judgment was entered thereon. Appellant contends that these instructions were erroneous.

There can be no question that the contract under which the car was delivered to Betz is what is commonly called a bailment lease: see Stern and Co. v. Paul et al., 96 Pa. Superior Ct. 112. It provides that the "lessor does hereby lease" and the "lessee hereby hires" the property for a certain "rental." The paragraph fixing the rental payments has already been quoted. Subsequent covenants provided, as we have seen, for its surrender, subject to the lessee's right to purchase. Other provisions were that on default the lessor might retake possession and all rights of lessee in the property and in the payments theretofore made should cease; and that no transfer, renewal, extension or assignment of the contract, or any interest thereunder, or loss, injury or destruction of the property should release lessee from his obligation thereunder. The relation between the parties was that of bailor and bailee and the first question arising under the instructions is whether the ascertained contributory negligence of the bailee is imputable to the bailor and bars its right to recover any damages. The main proposition of counsel for appellant is that under

the contract appellee retained title to the car for the sole purpose of securing payment to it of the unpaid installments and could, in no event, recover more than the sum of the payments remaining unpaid at the date of the accident, but they also contend that appellee's right to recover even that amount is barred by the negligence of its bailee.

While the earlier Pennsylvania cases supported appellant's theory that the contributory negligence of a bailee prevents recovery by the bailor, that rule is no longer the law in this State: Gibson v. B. & L. E. R. R. Co., 226 Pa. 198; United Motor Finance Co. v. Quaker City Cab Co., 82 Pa. Superior Ct. 272. As was pointed out in the case first cited, the bailee does not stand in the place of the bailor as the latter does not retain control of the instrumentality, nor is he the bailee's principal or master. Apart from precedent, this seems clearly the correct rule. Appellant by its negligence has destroyed the car and should not be allowed to set up as a defense against the claim of appellee the concurrent negligence of the third party; in fact they are joint tortfeasors; see Insurance Co. v. Vicksburg S. & P. Rwy. Co., 159 Fed. 676; N. Y., L. E. & W. Rwy. Co. v. N. J. Electric Rwy. Co., 60 N. J. L. 338, 38 Atl. 828. As an automobile is not in itself a dangerous instrumentality, there is no reason founded in public policy for holding the bailor responsible for the acts of one to whom he entrusts it, without proof that he should have reasonably known that the bailee was incompetent to drive or proof that the status of the bailee brought the bailor within some recognized sphere of vicarious liability. "There must be a relationship of master and servant, or of principal and agent, or such a reservation of direction and control, with respect to the use of the thing bailed, at the time and place of the injury, as would in legal con-

templation make the negligent act of the bailee also the negligent act of the bailor'': Morgan Co. v. Payne, 207 Ala. 674, 93 So. 628; 1 Thompson on Negligence, Sec. 499.* The first instruction complained of was not erroneous.

Our next question is whether appellee was entitled to the instruction that, if the jury found ''in favor of the General Motors Acceptance Corporation, it has a right to recover the full market value of the automobile at the time of the collision.'' There was nothing in the pleadings to justify this request for charge; appellee had not sued for the market value of the car but for the aggregate of the payments remaining unpaid at the time of the collision. The introductory paragraph of its statement of claim reads: ''General Motors Acceptance Corporation, plaintiff herein named, claims of Baltimore and Ohio Railroad, corporation defendant herein named, the sum of five hundred sixty and 09/100 dollars ($560.09), upon the following cause of action.'' Other averments are that it became the owner of the car through the purchase of the lease to Betz and that the accident, the circumstances of which are set forth, was occasioned solely by the negligence of appellant, and the statement concludes with this paragraph: ''By reason of the aforesaid collision the said automobile of the plaintiff was destroyed, and has no present value, by reason of which the plaintiff has been damaged in the full amount of its interest therein.'' This was the theory, and the sole theory, upon which the action was brought; by the submission of this point it endeavored to shift its ground and to recover upon an entirely different theory. The issue as framed by it under its

---

* The early Pennsylvania cases *contra* to the above rule are: Forks Twp. v. King, 84 Pa. 230; Winner v. Oakland Twp., 158 Pa. 405. The authorities generally are collected in 17 L. R. A. (N. S.) 925; 27 L. R. A. (N. S.) 690; 6 A. L. R. 316; 30 A. L. R. 1248.

statement was whether appellant was liable to it for the payments which it would have received from Betz if the subject matter of the contract had not been destroyed by appellant, but the issue under the point was whether appellant was liable to it for the full market value of the car regardless of the amounts it had already received from Betz. But, aside from this question under the pleadings, there are more vital considerations involved. If the accident had happened ten months later and Betz had made all the payments except the last, the complications incident to the affirmance of the point as a correct principle of law would have been more apparent. The principle adopted by the court below is not dependent upon the length of time the lease had been running; it would be equally applicable at any time during the term. By applying it after the lease had been running eleven months, appellee, although it had by that time received $837 in rentals, would recover an additional amount of $725 as the market value of the car—a total of $1,562 for a car sold when new for $887. It seems to be the position of appellee's counsel that it would be legally liable to pay over to Betz out of the recovery at least the aggregate of the rentals he had paid to it under the lease. If such payment should be made, or compelled, Betz would receive, under the circumstances we have assumed, $837 as one of the results of the accident although it had been judicially determined that his contributory negligence prevented him from recovering anything from appellant. Such anomalous results demonstrate that the measure of appellee's damages, suggested by it and adopted by the court below,—the full market value of the car at the time of the accident —should not be applied by the courts when the property injured or destroyed is held under a bailment

lease of this character unless clearly compelled to do so by the force of established principles.

In the case of an ordinary bailment the bailor would have a right to recover full damages for the destruction of the property: 6 C. J. 1166, Sec. 174. Title and the permanent interest in the chattel are in the bailor; the bailee has but a contract right to temporary possession. Granting this, appellant argues that in the case of a bailment lease the bailor does not intend to resume possession, that the contract in effect is to consummate a sale and that the ''rent'' really represents so much of the purchase price; hence, the bailor's title is merely reserved to compel performance, and he should get no more than what is unpaid. In support of this contention, appellant cites numerous cases involving conditional sales where it has been held that the seller may recover from a third party only the amount of the price unpaid, not, however, exceeding the then market value of the goods: see Williston on Sales (2d Ed.), Sec. 333; Rose v. Story, 1 Pa. 190. Where a third party is concerned, many questions arising under these bailment leases could be more readily and equitably disposed of if we were at liberty to treat the kind of a transaction we have in this case as a conditional sale. But until such time as our legislature may deem it advisable to bring our Conditional Sales Act into harmony with the Uniform Conditional Sales Act, as drafted by the commissioners and adopted in some other states, by including therein the provisions relative to contracts ''for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of such goods upon full compliance with the terms of the contract''

(which has not yet been done: Stern & Co. v. Paul et al., supra), we must continue to give effect to the distinguishing legal characteristics of contracts of bailment. We cannot adopt appellant's argument; it would be sound if the contract were one of conditional sale. In such case, "as the purpose of the seller's right, whether a legal title or whether a right to resume the title on the breach of condition, is merely to give him security for payment of price, the transaction is in essence a mortgage": Williston, supra, Sec. 330. The buyer has a real equitable interest in the property represented by the amounts of his payments and the seller has a title coincident only with his interest in the balance. Hence he can recover no more than that interest. On the other hand, the very essence of a bailment lease lies in the fact that there is no present sale and no title presently fixed in the prospective buyer, but, for the term of the lease, it is only a bailment with a mere right to acquire the title at some future time. "Such a transaction includes two distinct but consistent contracts—the one taking effect, if at all, when the other is spent. The contract of bailment preserves the ownership of the bailor during the particular relation created by it, and the contract of sale which supersedes it, transfers the title as soon as it is called into action, by payment of the price": Myer v. Harvey, 2 P. & W. 478, 481; Dando v. Foulds, 105 Pa. 74, 76. In considering whether a given transaction is a bailment or a conditional sale, courts will not hesitate to look beyond the name given it by the parties and ascertain for themselves whether it is in reality a sale, or whether the writings were designed to disguise what is, in effect, a mere debtor-creditor relation, with no change of possession: see Root v. Republic Acceptance Corp., 279 Pa. 55; Hoeveler-Stutz Co. v. Cleveland Motor Sales, 92 Pa. Superior Ct. 425; Com. v. Williams, 93 Pa. Superior Ct. 92.

Again, it has been held that a bailee under a contract such as we have here acquires the kind of an interest therein that may be realized on by creditors or those in privity with him—but not to the extent of affecting the rights of the bailor—Edwards' App., 105 Pa. 103; Packard Motor Co. v. Mazer, 77 Pa. Superior Ct. 348. This appellant, however, was a tortfeasor, stood in no privity of relationship to the bailee, and could not succeed to any of the latter's rights under the lease.

For these reasons we must reject the measure of damages contended for by appellant. On the other hand, we cannot accept the measure adopted by the trial judge. We have already indicated the legal difficulties and absurdities into which it inevitably leads. Granting that appellee, as bailor, had title to the car at the time of the accident, its title was encumbered by the option granted to Betz, as bailee, to purchase it for one dollar at the expiration of the term of the bailment, provided he made the specified rental payments in the meantime. We are not dealing with an ordinary bailment for use. That option necessarily affected the value of appellee's interest in the car; the sooner it might be exercised, the greater its effect upon that interest.

In Houston v. Western Washington Railroad Company, 204 Pa. 321, the issue related to the amount of damages the plaintiff was entitled to recover for land taken under the right of eminent domain. At the trial it was proposed by defendant to show that the plaintiff had been making efforts to sell his land which culminated in an option, executed a short time before the location of the railroad, and to show the price stipulated in the option. This evidence was excluded. Upon appeal the Supreme Court reversed, saying: "Declarations against one's interest, unless made with

a view to an adjustment of the differences between the parties, are always admissible against the party making them. For this reason the declarations or acts of a party showing his estimate of the value of his property at or about the time it is taken are evidence to his prejudice in proceedings to assess the damages for land taken under the right of eminent domain.'' What this bailor was entitled to recover from the tortfeasor was the actual value of its ownership in the property; that value was dependent to a large extent upon the length of time the lease had been running and whether the bailee had paid the rentals therein specified. It is therefore apparent that the value of the property right of appellee in the car was a question of fact for the jury, under the circumstances to which we have referred, as they existed in this case at the date of the accident.

As no questions relating to the respective rights of the bailor and bailee as against each other are involved and as each brought an action (the bailee's right to recover anything being defeated by his contributory negligence) we need not consider, upon this appeal, the measure of the damages the bailee would have been entitled to recover from the tortfeasor if he had shown a case free from contributory negligence, but, manifestly, his damages could not have exceeded compensation for the injury to his rights under the contract —the right to possess and use the car during the term of the lease and to buy it at its expiration upon the specified conditions. The amount of this compensation would also vary with and depend upon the facts disclosed by the evidence in each case. The point should have been refused; its affirmance was reversible error.

The order dismissing the petition for leave to appeal is reversed; the petition and rule thereon are reinstated and the record remitted with a procedendo.