## Jacobson et al. *v.* Lintz et al. (Maryland Casualty Co., Appel.).

Argued November 13, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John C. Arnold,* of *Arnold & Chaplin,* for appellant.

*Ross H. Pentz,* with him *John J. Pentz, W. C. Pentz* and *Abraham Pervin,* of *Sachs & Caplan,* for appellee.

OPINION BY RHODES, J., January 31, 1936:

The plaintiffs, M. C. Jacobson and S. H. Gordon, trading as Liberty Garage, issued a writ of replevin against Aaron Lintz and H. J. Miles, defendants, to recover the possession of a Willys-Knight sedan automobile. The defendants were not served, but service was made on the DuBois Keystone Motor Co., Inc., in whose possession the automobile was found by the sheriff. The DuBois Keystone Motor Co., Inc., intervened as a party defendant, and filed a counterbond, with the Maryland Casualty Company as surety.

The case came to trial, and the jury rendered a verdict in favor of the plaintiffs and against the intervening defendant in the amount of $500. The intervening defendant filed motions for new trial and judgment n. o. v. Both were refused by the court below, and judgment was entered on the verdict. The Maryland Casualty Company, surety on intervening defendant's counterbond, appealed.

The appellant assigns as error the charge of the trial judge as a whole, and several abstracts therefrom. We think the trial judge erred in his charge, and that intervening defendant's motion for new trial should have been granted.

On July 29, 1929, plaintiffs leased the automobile in question to the defendants. The rentals payable under the bailment lease amounted to $896, payable at the rate of $56 per month, and upon the payment thereof, the bailees (defendants) had the option to purchase the automobile, at any time within thirty days thereafter, for the sum of $1, and to receive a bill of sale for the

same. The bailment lease was assigned by the plaintiffs to the C. I. T. Corporation. The assignment also provided that the certificate of title showing an encumbrance in favor of the C. I. T. Corporation had been or would be forthwith applied for. A certificate of title for the automobile was issued by the Department of Revenue to the defendant Miles, and an encumbrance was noted thereon in favor of the plaintiffs in the amount of $1,295. The bailment lease contained the following statement of items of defendants' obligation:

"Value (List Price) of Car .............. $1,295.00

    C. I. T. Corp. charge (see Rate Chart)   121.00

    Total Rental ...................... $1,416.00

Less Rental Paid ...................... $  520.00

Balance in 16 equal monthly Rentals of $56   896.00

    Total ............................. $1,416.00"

At the time of the transaction, the defendants gave the plaintiffs an old car for which they were allowed a trade-in value of $155.62. Defendants likewise gave the plaintiffs a note in the amount of $364.38. These two items made up the down payment of $520, acknowledged by the plaintiffs in the bailment lease as rental paid. This note was eventually reduced by the payment of $100, and a new note given by Lintz, one of the defendants, for $264.38. Lintz went into bankruptcy, and the other defendant, Miles, paid $102.64 on the renewal note, leaving a balance of $161.74 on the same. The payments on the bailment lease were duly made by the defendant Miles as they fell due. While there was no default in the payment of rentals under the lease held by the C. I. T. Corporation, assignee of the plaintiffs, the defendant Miles made arrangements with the Du-Bois Keystone Motor Co., Inc., the intervening defendant, to purchase a new car, and for the intervening defendant to take the Willys-Knight sedan as part payment, advising the intervening defendant at the time

that the C. I. T. Corporation, at Pittsburgh, had the bailment lease covering the Willys-Knight sedan, upon which there was an unpaid balance. The intervening defendant endeavored to obtain the lease and the certificate of title from the C. I. T. Corporation upon the payment of the $280 balance payable under the lease. The C. I. T. Corporation reassigned the lease to the plaintiffs, who brought an action of replevin to recover the automobile leased by them to the defendants.

The learned judge of the court below charged the jury as follows:

"The theory of the plaintiff is that the lien covers all of this purchase money until paid in full and including the balance of $280 shown by the lease, so the question for you to determine is who is entitled to possession of this automobile.

"If you believe from the weight of the evidence that the transaction between Miles and Lintz and the Liberty Garage, was that all of the unpaid purchase money should be included in the lien and that there is a balance due to the Liberty Garage either by lease or note, then the plaintiff would be entitled to the possession of the automobile." (Appellant's second assignment of error.)

We are of the opinion that the court below erred in charging the jury to the effect that if they found that all of the unpaid purchase money was to be included in the lien or encumbrance on the automobile, and that there was a balance due to the plaintiffs, either under the lease or on the note, then plaintiffs would be entitled to possession of the automobile.

The relation between the plaintiffs and the defendants was that of bailor and bailee. Under the bailment lease, the plaintiffs, or their assignee, the C. I. T. Corporation, retained title to the car for the sole purpose of securing payment of the unpaid installments of rent as set forth therein, and, upon compliance with all the terms thereof,

the defendants were entitled to purchase the automobile by paying the further sum of $1, at any time within thirty days after the expiration of the term, and to receive a bill of sale for it.

The note held by the plaintiffs, upon which there was a balance of $161.74, was not a part of the rentals reserved under the bailment lease, but was a part of the sum of $520, acknowledged by the plaintiffs in the bailment lease as rental paid. Nor was this note made a lien on the automobile by virtue of the fact that the sum of $1,295 was inserted in the certificate of title as due the plaintiffs. "The purpose of such a certificate has been stated by us in Braham & Co. v. Steinard-Hannon Motor Co., 97 Pa. Superior Ct. 19. It has no effect on the contract executed between the parties": General Motors Acceptance Corporation v. Hartman et al., 114 Pa. Superior Ct. 544, 552, 174 A. 795, 798. See, also, General Motors Acceptance Corporation v. Baltimore and Ohio Railroad Company, 97 Pa. Superior Ct. 93, 97. At the time this action arose, Section 208 of the Act of May 1, 1929, P. L. 905 (75 PS §38), had not been amended by Section 1 of the Act of May 25, 1933, P. L. 1059 (75 PS §38, Pocket Part).

In the event that the defendants had continued to pay the C. I. T. Corporation the rental, as the same fell due, until the entire amount had been paid, and had complied with the conditions of the lease, the defendants would have been entitled to a bill of sale and the certificate of title for a nominal consideration. To have obtained the certificate of title and the bill of sale from the C. I. T. Corporation did not require payment of the note held by the plaintiffs in the amount of $161.74.

If there was a tender of payment by the intervening defendant, as authorized by and on behalf of defendant Miles, of the balance, before any default, as provided by the terms of the bailment lease, to the C. I. T. Corporation, then the plaintiffs cannot set up a default

by defendants to justify seizure of the automobile, and they cannot recover from the intervening defendant in this case more than the amount due under the lease, which the pleadings admit to be $280. Packard Motor Car Co. v. Mazer, 77 Pa. Superior Ct. 348; White Co. v. Union Transfer Co. et al., 270 Pa. 514, 113 A. 432. On the other hand, if the C. I. T. Corporation acted properly in reassigning the bailment lease to the plaintiffs, and there was a default upon the part of the defendants whereby they forfeited any rights which they may have had under and by virtue of the bailment contract, the plaintiffs thereupon had not only the title to, but the right to the possession of, the automobile, and were entitled to recover from the intervening defendant the full value thereof.

In view of the fact that there was no tender to the plaintiffs, at the time of the trial, of the $280 which the intervening defendant admitted to be due to the plaintiffs from the defendants, the plaintiffs are not liable for the costs. Costs are therefore to be paid by the appellant.

Judgment is reversed, with a venire facias de novo.