Morgan-Gardner Electric Company, Appellant, *v.* W. Harry Brown, C. D. Callery, James S. Braddock, Boyle Bros. Coal Co., J. E. Boyle, J. D. Boyle, H. L. Studa, Henry Schoenthal, First National Bank of Washington, Pa., and N. H. Boyd, and Pennsylvania Title & Trust Co., Assignee of Henry Floersheim.

*Sale—Conditional sale—Bailment—Preferred payment—Retention of possession.*

Where a contract in writing provides for the delivery of goods by one person to another, but with a retention of the legal title until certain promissory notes given for the goods be paid, and there is no provision for the return of the goods if the notes be not paid, the transaction constitutes a conditional sale, and not a bailment, notwithstanding the fact that the contract is called a "lease" in the paper itself.

A purchaser agreed to take certain machinery on approval, and, if satisfactory, to pay a stipulated price. After the trial, another agreement was made reciting that the seller had delivered and leased to the purchaser the machinery, in consideration of the delivery of certain notes; the title to remain in the seller until the notes were paid; that the purchaser was to retain possession unless he defaulted in payment; and that, on payment, the seller was, by bill of sale, to convey all title to the purchaser. A receipt for the notes recited that the title was to remain in the seller until they were paid. *Held,* that such agreements evidenced a conditional sale, and not a bailment.

Argued Oct. 17, 1899. Appeal, No. 59, Oct. T., 1899, by plaintiff, from judgment of C. P. Washington Co., Nov. T., 1898, No. 57, non obstante veredicto. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Issue on sheriff's interpleader.

Rule for judgment non obstante veredicto.

The facts appear by the opinion of McILVAINE, P. J., which was as follows:

A single question of fact was submitted to the jury in this case, as will appear by reference to the charge of the court, and that was substantially this: " Did the paper marked exhibit ' C,' and offered in evidence, contain an agreement which had been orally entered into by the parties thereto in September, 1896, when the machinery of the electric plant mentioned in exhibit 'A' was accepted by the Boyle Bros. Coal Co. ? " The jury found that it did. And with that fact found we have a case which raises the question of law reserved, to wit: " Is there any evidence in this case which entitled the plaintiff to recover any of the property it claims ? " This question includes the other question of law reserved, to wit: " Is the agreement evidenced by exhibit ' C ' a conditional sale ? " What, then, is the plaintiff's case ? It is this:

## FACTS.

1.  Exhibit " A."

" CHICAGO, ILL., May 11, 1896.
" BOYLE BROS. COAL COMPANY,
     " PITTSBURG, PA.

" Gentlemen : In accordance with data given us, and by the request of our Mr. A. S. Cook, we beg to submit the following proposition for Power Plant and Electric Machinery for your mine at Hackett, Pennsylvania, viz: " (Here follows description of different parts of the machinery for the plant, with price of each part; then follows.) " Proposition : We propose to deliver the above machinery and material at your mine and erect same in buildings and on foundations to be furnished by you, you furnishing the brick work for the boiler and water supply, we furnishing the labor and superintend the erecting of the plant complete in all respects as specified. You to be allowed to run the plant for thirty (30) days on approval before acceptance, when, if entirely satisfactory to you, you are to accept the plant and pay us the net sum of nine thousand eighty-three dollars ($9,083) in cash or its equivalent in bankable paper, made payable to the order of this company. If commercial paper is given for longer time than bankable paper, same must bear the personal indorsement of one or more of the officers of your com-

pany. We guarantee all machinery and material furnished by us to be of the very best known at the present time, and workmanship to be of first class in every respect. We will furnish all necessary parts for repairs required by you for our undercutting chain machines for one year from date of invoice for same, free of charge to you, delivery to be f. o. b. cars Chicago, excepting such parts and repairs as may be made necessary as the result of carelessness, misuse or accident on your part or the part of your employees.

"Respectfully submitted,
        "MORGAN–GARDNER ELECTRIC COMPANY,
                "Per ROBERT RYAN, Gen. Mgr.
"Accepted May 27, 1896.
        "BOYLE BROS. COAL COMPANY.
                "By J. E. BOYLE, Treas."

2. A short time after this proposition was accepted by the Boyle Bros. Coal Company the Morgan-Gardner Electric Company shipped most of the machinery called for to Hackett, Pa., and caused the electric plant to be erected, when it was turned over to the coal company for trial.

3. Shortly after the trial period of thirty days had expired, some time in September, 1896, the agent of the electric company came on from Chicago to learn the result of the trial and to settle with the coal company, if they accepted the machinery and plant as satisfactory. At that interview a contract was entered into and a settlement made.

4. The contract was as follows (exhibit " C "), the Morgan-Gardner Electric Company being designated as party of the first part and the Boyle Bros. Coal Company as party of the second part:

"Whereas, the said party of the first part has this day delivered and leased to the party of the second part the following described goods and chattels: One (1) Union Iron Works No. 17, 72 " x 18 flange steel tubular boiler, etc.

"In consideration that the said party of the second part has this day executed and delivered to the party of the first part its certain promissory notes aggregating the sum of nine thousand and eighty-three dollars; therefore, it is hereby understood and agreed:

" First. That the title and ownership of said goods and chattels so delivered and leased shall be and remain in said party of the first part until the promissory notes so as aforesaid executed and delivered by the party of the second part shall be fully paid according to their tenor and effect.

" Second. That the said party of the second part shall have the right to retain possession of said goods and chattels, unless such right shall be forfeited by the default of said second party, as hereinafter specified, and to use the same at its own risk; and the said party shall keep said goods and chattels in good order and repair at its own expense, and shall have the privilege of acquiring the absolute title and ownership of said goods and chattels on the terms and conditions hereinafter expressed.

" Third. In the event that said party of the second part shall make default in the performance of any of its agreements herein or in the payment of said notes, or either of them, then said party of the first part may, at its option, terminate this agreement of lease by giving the said party of the second part five (5) days' notice in writing of its intention so to do. (It being understood that the sending of such notice through the United States mail, addressed to said party, shall be sufficient service of the same), and thereupon said party of the first part shall have the right to enter upon and into the premises of the party of the second part, wherever said goods and chattels may be, and repossess itself of said goods and chattels and hold the same discharged of all further liability hereunder.

" Fourth. If said party of second part shall faithfully perform all of its agreements herein, and shall fully pay all said notes according to their tenor and effect, then when said notes shall be fully paid, whether due by their terms or after extension, the said party of the first part shall execute a bill of sale conveying all its rights, title and interest in and to said goods and chattels to said party of the second part, and thereupon all obligation of both said parties under this agreement shall terminate.

" Fifth. All the obligations hereby entered into by said parties shall hold and be binding on their respective successors and assigns."

5. At the same time that this agreement was entered into

and "goods and chattels" were delivered to the Boyle Bros. Coal Company, this paper, exhibit "B," was given and accepted by the coal company.

"Received, Pittsburg, Pa., September 18, 1896, of Boyle Bros. Coal Company the following notes:

| | | | | | | |
|---|---|---|---|---|---|---|
| One (1) note at six (6) mos. for . | | | | . | . | $   500 00 |
| " | " | 9 | " | " | . . | 600 00 |
| " | " | 10 | " | " | . . . | 756 67 |
| " | " | 12 | " | " | . . | 1,250 00 |
| " | " | " | " | " | . . . | 900 00 |
| " | " | " | " | " | . . | 850 00 |

—making in all,   .   .   .   .   .   .   $4,756 67

which amount is in full settlement for mining plant furnished by us for their Hackett mine under our contract dated May 11, 1896, less (3) mining machines and one 75 K. W. generator which were not put in but which may be had by Boyle Bros. Coal Company at any time they desire at the prices named in the contract. In place of the 75 K. W. generator we have furnished a 50 K. W. generator for which we have charged five hundred dollars ($500). This generator we are to remove at our expense and replace with the 75 K. W. generator allowing a credit on same of $500 for the returned.

"It is understood that this plant is to remain our property until the above mentioned notes are paid.

"MORGAN-GARDNER ELECTRIC CO.
"Per ROBERT RYAN, Gen'l Mgr."

#### QUESTION.

Taking these three exhibits and what was done under them,—that is, the delivery of the property for trial under exhibit "A," and the acceptance of it after trial under exhibit "C," and the acceptance of the commercial paper under exhibit "B," was the transaction a "conditional sale" or a "bailment"?

#### CONCLUSION.

In considering this question it must be admitted that the original "proposition" and "acceptance" contemplated a sale, and unless the subsequent contract made in September, 1896, as evidenced by exhibits "C" and "B" is so at variance with

the contract that was contemplated in exhibit " A " that it cannot stand, then we must construe them together. In other words, there was no evidence that the contract of sale contemplated in exhibit " A " was abandoned, except that found by implication in the contract made at the time of settlement in September, as evidenced by exhibits " C " and " B." Do these exhibits show that the parties intended to substitute a contract of bailment for hire for a contract of sale originally contemplated? We think not. They rather show a purpose on the part of the Morgan-Gardner Electric Company to hold on to the title to the property to secure the payment, not of rent, but of the purchase money. In exhibit " B " the electric company expressly says that the notes received from the coal company by it " is in full settlement for the mining plant furnished by us for their Hackett mine under our contract dated May 11, 1896," etc., and it also says in this exhibit that " it is understood that this plant is to remain our property until the above mentioned notes are paid." Clearly exhibit " B " does not evidence an intention of the parties to change the contemplated contract of sale found in exhibit " A " to a contract of bailment, but on the contrary shows that notes were given in full settlement of the purchase price provided for in exhibit " A," and only adds that the title to the property shall not pass until the notes are paid. A condition, it is true, was added to the contract of sale, but surely not such a one as to create a bailment. Now, let us examine exhibit " C." The word " lease " is used in this agreement, but we take it that that throws no light on the character of the contract. If the delivery of the property was made under such circumstances as to show it was a conditional sale, calling it a lease will not make it a contract of bailment for hire or use. The " whereas " of the agreement connects it with exhibit " B," and shows that the notes which were therein receipted for were included in the consideration of this agreement. The first paragraph reiterates what was stated in exhibit " B "; that is, that the title and ownership of said goods should remain in the electric company until the notes are fully paid. No evidence here of a bailment, but, on the contrary, of a conditional sale, the retention of title to secure the purchase money. The converse of this paragraph is that if the notes are fully paid the title and ownership of the goods and chattels

shall be unconditionally in the coal company. The second and third paragraphs simply provide that the coal company can "acquire absolute title and ownership of said goods and chattels" by paying said notes, and that if it does not pay said notes and take care of the machinery until the time of payment comes the electric company can enter and repossess itself of the goods and chattels. What is this but a provision for the enforcement of the payment of the purchase money as in a conditional sale. Surely we find in these paragraphs no earmarks of a bailment. The fourth paragraph simply provides that if the coal company pays the notes according to their tenor and effect it will be entitled to have a bill of sale from the electric company. In other words, when it performs the conditions of the sale its conditional title becomes "absolute" and it will be entitled to a paper showing that fact. Nowhere in this agreement can we see the least evidence of a bailment except in the word "lease." While, on the other hand, a sale of the property on condition that the vendor retain the title as security for the payment of the purchase money is evidenced by every paragraph in the agreement and by exhibit "B," and is good between the parties, but void as to the creditors of the parties having possession of the property.

We have pointed out some of the affirmative reasons why we think this agreement evidences a conditional sale; let us now consider for a moment the negative evidence that it is not a bailment. As said by Mr. Justice WILLIAMS, in Stephens v. Gifford, 137 Pa. 219, "it is of the essence of a contract of bailment that the articles bailed be returned, in its own or some altered form, to the bailor, so that he may have his own again." This contract makes no provision either expressly or by implication for the return of the property to the electric company. The contract, if carried out according to its provisions, leaves the property in the possession of the coal company, and the only provision for its return is in case of a failure of the coal company to make its payments. This provision was not put in the contract to insure the return of the property to the electric company, "so that it might have its own again," but to insure the payment of the notes, so that the property might remain in the possession of the coal company as its own. It was a contract remedy to enforce payment, not of hire, but of

purchase money. The case of Farquhar v. McAlevy, 142 Pa. 233, is very similar in its facts to the one at bar; there the court held the contract was a conditional sale and not a bailment, notwithstanding the parties called their agreement " a lease " and the money that passed between them " hire."

We are clearly of the opinion that we erred in not giving the jury binding instruction to find for the defendant for the reason that the plaintiff's title to the goods in question was under a contract of conditional sale and not a contract of bailment, and that this contract was void as to the creditors of the Boyle Bros. Coal Company.

And now, January 27, 1899, judgment entered in favor of the defendants for the property described in the plaintiff's statement and the money realized from the sale of the same, on the questions of law reserved at the trial, non obstante veredicto.

*Error assigned* was in entering judgment for defendants non obstante veredicto.

*M. W. Acheson, Jr.,* with him *C. L. V. Acheson,* for appellant.— Under the facts as found by the jury judgment should have been entered in favor of the plaintiff on the verdict in its favor : Goss Printing Press Co. v. Jordan, 171 Pa. 474; Jones v. Wands, 1 Pa. Superior Ct. 269; Dando v. Foulds, 105 Pa. 74; Tufts v. Spengler, 20 W. N. C. 62.

All the so-called " leases " which have been sustained look to an ultimate sale. And in many, if not all of them, the instalments paid by the bailee constitute the price : Brown Bros. & Co. v. Billington, 163 Pa. 76.

To constitute a bailment, neither payment for the use of the goods, nor a promise to return them, is essential : Enlow v. Klein, 79 Pa. 488; Edwards's App., 105 Pa. 103.

In the cases sustaining contracts of bailment looking to an ultimate sale, the term of the bailment ordinarily ends with the last instalment : Rowe v. Sharp, 51 Pa. 26; Wertz & Co. v. Collender Co., 20 W. N. C. 59.

The giving of notes was entirely consistent with the bailment. A note is a mere collateral : Wertz Co. v. Collender Co., 20 W. N. C. 59; Ditman v. Cottrell, 125 Pa. 606; Waldron v. Haupt, 52 Pa. 408.

*T. F. Birch*, with him *H. & G. C. Burgwin*, for appellees.—
Where by the contract of the parties the owner transfers the
possession of the property to the vendee, reserving to himself
the naked title solely for the purpose of securing the payment
of the price agreed upon, the contract is a conditional sale:
Haak v. Linderman, 64 Pa. 501; Stadtfeld v. Huntsman &
Co., 92 Pa. 53; Thompson v. Paret & Co., 94 Pa. 275; Dear-
born v. Raysor, 132 Pa. 231; Wagner v. Com., 16 W. N. C.
75; Cooper & Co. v. Whitmer, 18 W. N. C. 376.

The title could not be revested in the claimant without an
open and complete redelivery to him: Brunswick & Balke Co.
v. Hoover, 95 Pa. 508; Kestner & Lauer v. Keiser Cigar Co.,
4 Pa. Dist. Rep. 479.

The court, in determining whether or not a contract is one
of bailment, or one of sale with an attempt to retain a lien for
the price, do not consider what name the parties have given to
the contract, but what is its essential character: Ott v. Sweat-
man, 166 Pa. 217; Waldron v. Haupt, 52 Pa. 411; Stephens
v. Gifford, 137 Pa. 219; Summerson v. Hicks, 134 Pa. 567;
Publishing Co. v. Ins. Co., 189 Pa. 300.

PER CURIAM, October 30, 1899:

Notwithstanding the very able argument of counsel in sup-
port of the plaintiff company's contentions we are not convinced
that there is any substantial error in the rulings of the learned
president of the common pleas; and for reasons given in his
opinion on the questions of law reserved, the judgment in the
defendant's favor non obstante veredicto is affirmed.