## Lippincott *v.* Scott.

*Lease—Conditional sale—Bailment.*

Where one person leases to another personal property for a term of years in consideration of a fixed sum to be paid in monthly instalments, and agrees in case of no default to execute a bill of sale of the property, the agreement is a bailment, and not a conditional sale. The character of such an instrument is not changed by the fact that notes were given for the instalments.

Argued Oct. 30, 1900. Appeal, No. 157, Oct. T., 1900, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1897, No. 710, on verdict for plaintiff in case of Charles Lippincott & Company *v.* James R. Scott, assignee of Emma S. Kuhn. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Replevin to recover a soda fountain. Before White, P. J.

At the trial plaintiffs offered in evidence the following paper:

"LEASE CONTRACT.

" This agreement, made this thirteenth day of November, 1893,

198    283
 22 SC  607
198    283
f 29 SC  265
198    283
f218    523
198    283
41SC 472

by and between Chas. Lippincott & Company, of Philadelphia, Pennsylvania, party of the first part, and D. C. Kuhn, Pittsburg, Pennsylvania, party of the second part.

"Witnesseth, That the party of the first part hereby leases and hires unto the said party of the second part the following soda water apparatus, bearing the name of Chas. Lippincott & Company as makers, and known as Style 1–36–15 Draught Hermosa Apparatus, and fixtures, for the term of thirty-seven months from the date thereof, reserving for the hire and use thereof for the said term the sum of four thousand dollars, payable as follows, viz., and the residue in monthly payments, as follows:

"One thousand dollars due January 1, 1894; eighty-four dollars per month for 12 months from February 1, 1894; eighty-three dollars per month for 24 months from February 1, 1895; during the term of this lease, 6 per cent interest.

"And the said lessee agrees as follows with the said party of the first part, to-wit: That he will pay the unpaid hire as aforesaid, the several days as it becomes due; that he will take good care of said soda water apparatus, and will not, without the written consent of the party of the first part, sell or hire the same, or part with the possession thereof, or remove it from the premises now occupied by him at Pittsburg, Pennsylvania, until the conditions of this lease are fully complied with; that he will at any time, when required, exhibit the said soda water apparatus to the party of the first part or their agent; and in default of any monthly payment the said lessee agrees to redeliver said soda water apparatus to the said Chas. Lippincott & Company, or their authorized agent, within five days after such payment shall become due, or permit their agent to enter into and upon any premises where said soda water apparatus may be, and without let or hindrance take away the same, and further agrees to return said apparatus at the end of the term.

"The said party of the first part hereby agrees that if at the expiration of the term of this lease, the said lessee, his legal representatives or assigns, shall wish to purchase said soda water apparatus, the said Chas. Lippincott & Company will make and deliver to said lessee, or such representatives or assigns, a bill of sale thereof upon payment of such sum as will, with previous payments of hire, amount to the sum of four thousand dollars; but it is hereby expressly understood and agreed by

and between the said parties to this agreement, that no title to the said soda water apparatus, either legal or equitable, shall vest in the said party of the second part, except as lessee under the agreement, until the terms of purchase, as above provided, have been complied with, and the aforesaid bill of sale has been duly delivered by the said party of the first part."

Defendant claimed that the interest of D. C. Kuhn had been sold by the sheriff in August, 1895, and purchased by Emma S. Kuhn, who used it in her business until she made a voluntary assignment for the benefit of creditors to James H. Scott on May 22, 1897. Defendant claimed that there had been an actual sale of the fountain to D. C. Kuhn, and that the lease was merely given as security for the payment of notes that Kuhn had made to cover the monthly instalments.

The court charged in part as follows:

[Now, unless there was an absolute purchase, and that purchase consummated before this lease was signed, the defense would fall on that head. But according to Mr. Kuhn's own testimony, I hardly think there was any consummation of this negotiation or arrangement for the purchase of this until this paper was signed, and it was signed as a lease. The paper says so. He admits he signed this, and the testimony of the other two witnesses for the plaintiff is to the effect that there never was any sale except this agreement. It will not do for the jury to take his testimony against the testimony of two other men and also the paper itself. A man is presumed to know what he signs—is bound by it. The paper was signed by Mr. Kuhn, and, in addition to signing the agreement, he signed this note at the bottom of it: "I have received a copy of the above agreement, and have no understanding, verbal or otherwise, different from it." And yet he comes into court and sets up a totally different agreement from this that he signed, and from that note that he signed at the bottom of this paper. If this was the contract between the parties, that defense of its being a purchase in place of a lease falls to the ground.] [4]

[The other ground is that there was a sheriff's sale. According to the testimony, and admitted even by Mr. Kuhn himself, when he failed in business there was a sheriff's sale of his premises. Notice had been given to the sheriff by Lippincott

& Company that they claimed this soda water apparatus, and that it was not the property of D. C. Kuhn. He said that no notice was given at the sheriff's sale about it, but the witness for the plaintiff testifies that express notice was given at the sale, and that the sheriff refused to sell it, when Kuhn or his attorney insisted upon the sheriff selling the interest of D. C. Kuhn, and, according to that witness, the sheriff knocked it down at $1.00, as Mr. Kuhn says, in the name of his wife. Why, the very fact shows that it was not a bona fide sale of this, and it is admitted by the defendant that Mrs. Kuhn knew of this lease. She bought with knowledge of this lease. She had no rights therein superior to D. C. Kuhn himself; and it is the same as if D. C. Kuhn was to-day defending in this action, because her title or rights do not rise any higher than his. She bought simply his interest, whatever it was, and that interest is subject to this lease.] [5]

[From the testimony it seems that Kuhn had paid the $1,000 at the time the lease was signed, and he paid for some fourteen or fifteen months the notes that he gave at the time, amounting altogether to $2,300 of payments. It is said that Kuhn gave notes for these and future payments. That is perfectly proper, perfectly proper to give the notes, if it was a lease, and the lease would be security for the unpaid purchase money, that is, the unpaid money on the arrangement to purchase this apparatus. I say the lease itself is security for those future payments, and so the notes would simply be for the same purpose, and there is no impropriety in speaking of the lease being security for those notes, because the notes correspond precisely with the payments set forth in the lease. Notes were given, I suppose, simply as a matter of convenience, because when he paid a note he would lift it. If he had not given any notes there would have to be a credit and receipt for each payment; but when he lifted the note it was evidence of payment—evidence of the monthly payment according to the lease.] [6]

[There is sometimes a prejudice against lessors in leases of this kind, and very properly, sometimes. Occasionally it is a great hardship. We sometimes have in court a case where a woman has got a sewing machine on a lease, or furniture for the house, and after paying one half or two thirds, perhaps, of the amount, got a little in arrears, and the landlord comes and

levies upon it and takes it, and the person forfeits what has been paid—a great hardship in that, and our sympathies are often with the poor, who are then made the victims ; and sometimes they are the victims of unconscionable landlords in cases of this kind.   But this is not a case of that kind.   Very evidently it was the design of Mr. Kuhn to get this property without paying the future instalments.   The defendant contends that that sheriff's sale to his wife for $1.00, paying nothing afterward, cut out entirely the plaintiff's claim here, and that not a dollar more could be recovered by the plaintiff.   Mrs. Kuhn could, as a matter of course, have continued to pay these instalments, and in that way finally got a perfect title to this apparatus ; but not a dollar was paid by her ; but, relying presumably upon that sheriff's sale, she wanted to claim title under that, and in that way prevent the plaintiff from ever getting another dollar on his contract.   In addition to that, Mr. Kuhn moved this apparatus from the place where it was put up, in direct violation of the covenant in this lease that he would not move it without the consent of the lessor.   The agent here assisted in moving it to the place on Wood street, but says that Mr. Kuhn told him that he had the consent of Lippincott & Company for the removal of it.   There is no evidence that he ever got the consent of Lippincott & Company for the removal of it.] [7]

Verdict and judgment for plaintiffs.   Defendant appealed.

*Errors assigned* among others were (4–7) above instructions, quoting them.

*F. C. McGirr*, with him *John Marron*, for appellant.—This case is ruled by Brunswick & Balke Co. v. Hoover, 95 Pa. 508.

An agreement, on its face a bailment, will be regarded as a conditional sale, if such be shown to be the real intent of the parties : Simon v. Edmundson & Perrine, 10 Pa. C. C. R. 315.

*L. L. Davis*, for appellee.—The contract in this case was a bailment ; Rowe v. Sharp, 51 Pa. 26 ; Enlow v. Klein, 79 Pa. 488 ; Brown v. Billington, 163 Pa. 76.

The question of taking notes for the instalments of rent is also well settled, and the notes are a constituent part of the contract of bailment : Ditman v. Cottrell, 125 Pa. 606 ; Lippincott & Co. v. Holden, 11 Pa. Superior Ct. 15.

PER CURIAM, January 7, 1901:

The appellant asserts that the principal question for consideration in this case is whether the agreement for the transfer of the soda water fountain was a bailment or a conditional sale. The jury found by their verdict that it was a bailment. If the verdict was warranted by the evidence and no error was committed in the instructions to the jury, the verdict and the judgment thereon must prevail against the appellant's claim. The written agreement of the parties appears on its face as a bailment. It is clearly within Rowe v. Sharp, 51 Pa. 26, Enlow v. Klein, 79 Pa. 488, Brown v. Billington, 163 Pa. 76, and Ditman v. Cottrell, 125 Pa. 606. The effort of the appellant to make the agreement appear as a conditional sale has no material or satisfactory evidence to support it. As to the instructions complained of it is sufficient to say that we have discovered no error, or anything of an unfair or partial nature in them.

Judgment affirmed.