**MAYER et al. v. MARCUS MAYER CO.**
No. 7089.

District Court, E. D. Pennsylvania.
Sept. 23, 1938.

Felix & Felix, of Philadelphia, Pa., for exceptants.

James J. O'Brien, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

This controversy includes a question which will not down. It is that of whether a transaction was a conditional sale of personal property or a valid Bailment Lease. We say includes because the fact situation here is somewhat unique, differing in some features from the Bankruptcy cases in which the question often arises. All attempts to acquire or retain title to or a lien upon personal property, when the possession is in the debtor of the claimant, are frowned upon by the common law. The Statute of Elizabeth, which is in force in Pennsylvania and Statutes against fraudulent conveyances, 39 P.S.Pa. § 351 et seq., enforce the doctrine of the common law. Some transactions are not within the doctrine however. A bailment is one. The owner of personal property may part with the possession of personal property to another by hiring it out to him and yet retain unimpaired title. He cannot however as vendor sell to another as vendee with delivery of possession and yet retain title to the property sold as security for the purchase price. We have said he may not do this. This is an inaccurate statement. He may generally speaking make any agreement with his vendee and it may take the form of an agreement; that what is in fact a sale is not a sale but a bailment and as against his vendee or bailee the transaction is what they have agreed it to be. This make believe title attempted to be thus retained by the vendor is void only as against execution creditors or innocent purchasers for value.

This takes us to the first feature of this case. The claimant may be viewed as the owner of articles of machinery which it delivered to the Marcus Mayer Company to be used by the latter for trial

purposes, with an option to purchase after one month's trial, if the trial test was satisfactory, the purchase price to be paid in installments evidenced by four promissory notes bearing interest, the deferred payment to be secured by "a chattel mortgage or lease". The test was satisfactory, and the vendee retained the property giving to the vendor a so called Bailment Lease in valid form. The vendee soon after encountered financial difficulties and the usual form of Receivership Bill was filed and Receivers in Equity appointed. The defendant in the Bill proved to be hopelessly insolvent and its assets as liquidated by the Court were insufficient to pay even administration charges and expenses. The vendor or bailee filed a reclamation petition asking the Court to decree that the machinery in question be turned over to the claimant as its property and as forming no part of the assets of the Receivership Estate.

■ The petitioner's claim of title was referred to the Master who had been appointed to distribute the Receivership estate. The Master made a Report deciding adversely to the claimant who has excepted to the Report and asks the Court to decree that the claimant has title and to award to it the property. These are the exceptions before us. A Receivership Bill in Equity is an anomaly. It has no support in legal principles or the doctrines of Equity. When the practice of filing such Bills was introduced, it was found to be so convenient to the parties and to creditors that no one questioned it. The Courts sanctioned Receivership Bills out of deference to what had become an established practice. When the question of the judicial power of the Courts of Equity to entertain such Bills was raised, the Supreme Court ruled that the Courts were without jurisdiction but that the lack of jurisdiction was one which could be waived by the defendant and upheld Receivership Bills if the defendant acquiesced. Since then Bills of this kind are always accompanied by a confessing Answer. The Supreme Court of Pennsylvania countenanced them in the case of corporation defendants and afterwards extended this to partnerships. It balked however from sanctioning proceedings against individuals. Receivership Bills under the practice became what were in practical effect Assignments for the benefit of creditors. The appointed Receiver succeeded to all the assets of the debtor, holding them for administration purposes, and if the debtor proved insolvent, for liquidation and distribution among creditors. The first question thus becomes whether such a Receiver is possessed of the rights of an execution creditor to avoid conveyances in fraud of creditors. We will not pause to discuss this question further because the experienced and very capable counsel for the claimant concede a Receiver in Equity has such rights if the defendant in the Bill is insolvent. The Master has found insolvency. The claimant urges error in this. Aside from the deference due to the fact findings of Masters, the Master here was clearly right. This defendant had an indebtedness of over $150,000 or possibly $200,000. On distribution no creditor will receive a single cent. A finding of solvency under such a condition would be farcical.

■ This disposes of the first question and brings us to the real question in the case. It may be said to divide itself into two questions. Was the transaction here a sale in fact and truth, and if so, was it converted into a bailment by the parties casting it in that form? The practical importance is that the purchase price of the machinery in question was $60,000. This was paid with the exception of something over $12,000. For this balance the claimant takes back the $60,000 property or whatever it may be worth. The original transaction was at first undoubtedly a bailment because it was the committing of the machinery to an expectant purchaser for test trial purposes. There was however an option to purchase. When this option was exercised the transaction was a sale. The vendor might have assured the payment of the purchase price by complying with the provisions of the Conditional Sales Act, 69 P.S.Pa. § 361 et seq. This it did not do but chose to rely upon a so-called Bailment Lease executed by the vendee. Can the vendor reclaim the property from the possession of the Receiver to whom we have ascribed all the rights of an execution creditor or a Trustee in Bankruptcy of the vendee or bailee, whichever it is found to be? We confess to some embarrassment in discussing this question. It is whether the vendor of personal property may, when the transaction is in truth and fact a purchase and sale, as against execution creditors of the vendee to whom possession

of the property has been delivered, retain the title as security for the payment of the purchase price? Our embarrassment is due to the circumstance that as an individual our opinion is that such vendor cannot retain title or a lien as against execution creditors of the vendee.

■ We are confronted however with the case of In re Max Stein, D.C., 17 F.Supp. 587, which it is urged upon us decides otherwise. The ruling made in that case is authoritative and controls this Court, whatever may be the individual opinion of the sitting Judge.

■ A short review of the Bailment Lease controversy is helpful to an understanding of the Stein Case and of the subject. Beyond all doubt the owner of personal property may give the possession and use of it to another for hire, without affecting his title thereto. He may not however, as against creditors of his vendee, sell personal property to another and yet retain the title as security for the purchase price. Whether he has done the one thing or the other is a question of fact to be found as any other fact is found. As between vendor and vendee there are several ways in which the vendor might retain title or a lien. One is by a chattel mortgage; another is by a conditional sale. Neither would be good against creditors. In recent years the practice of installment sales has very greatly increased. Strenuous efforts followed to give protection to vendors. The Legislature responded to the pressure by enacting the Conditional Sales Act. Vendors however were unwilling to comply with its provisions. Then the device of a Bailment Lease was resorted to. At first the Pennsylvania trial Courts sought to meet the problem by criticising the form of the so called leases. Condemnation for some defect only resulted in a new form. Soon the Bailment Lease form had been so far perfected as that no defects could be found. The Courts were then faced with the question of whether installment sales contracts should be upheld, notwithstanding the Statute of Elizabeth.

The Stein Case was ruled upon the theory that Pennsylvania contracts were ruled by the Pennsylvania law and that the Courts of Pennsylvania had so far yielded to the need for protection to the big business now concerned with installment sales as that they would uphold such a sale provided only that it was cast in the form of a valid Bailment Lease. It is true that a number of cases ruled by the Superior Court and cited in the majority opinion in the Stein Case seem to justify this conclusion. It was urged however that the Supreme Court had ruled otherwise. Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650. The Stein Case supported its ruling by that of the Circuit Court of Appeals in the case of General Motors Acceptance Corp. v. Horton, 3 Cir., 85 F.2d 452, which was interpreted to have ruled that notwithstanding that in truth and fact a transaction was a sale that if the vendee executed a Bailment Lease, the vendor could assert his title against a trustee in bankruptcy. So far as we are advised the Circuit Court of Appeals has not passed upon this interpretation of its ruling in the Horton Case, nor whether that case is merely authority for the proposition that where the written instrument executed by the parties to a transaction made of it a bailment, the finding could not be made from the instrument alone, that the transaction was a sale.

■ The learned Master ruled the instant case with these decisions before him. The writing here was not the Bailment Lease alone but the agreement of purchase as well, both of which the Master held should be read together. When so read in the light of the testimony and other evidence the finding was justified that the claimant's assignor had first sold the machinery in question and delivered possession to the vendee, from whom he had subsequently taken a Bailment Lease. The Master has held that the view taken by him is consistent with the ruling in the Stein Case, and has vindicated his opinion in a Report of exceptional clarity and force. We see no need to add to it. All which could be said would be a mere paraphrase of what he has so well said.

A formal decree dismissing the exceptions and confirming the Report of the Master may be submitted.