**COMMERCIAL INV. TRUST CO. v. MINON et al.**

No. 6914.

Circuit Court of Appeals, Third Circuit.

June 13, 1939.

David H. H. Felix and Felix & Felix, all of Philadelphia, Pa., for appellant.

Sidney E. Smith and James J. O'Brien, both of Philadelphia, Pa., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

On April 28, 1932, receivers in equity were appointed for Marcus-Mayer Company by the District Court for the Eastern District of Pennsylvania. Thereafter Commercial Investment Trust Company, the appellant, filed a petition seeking to reclaim twelve high speed automatic printing presses in the possession of the receivers. It alleged that the Miller Printing Machinery Company, its assignor, had delivered these machines to Marcus-Mayer Company under bailment lease agreements and that it was entitled to repossess them because of a default in payment of the rental due under the agreements. The receivers denied that the contracts under which delivery of the presses was made were bailment leases and contended that they were conditional sales in which the reservations of title were void as against the receivers.

The first machine, printing press No. 621, was delivered in May 1925 under an oral arrangement for a trial of it. After a trial, Miller Saw-Trimmer Company, subsequently named Miller Printing Machinery Company, and Marcus-Mayer Company on May 26, 1925, executed a bailment lease covering this press in which provision was made for total rental payments of $3500. Between November 30, 1925 and January 27, 1930, eleven additional presses were acquired by Marcus-Mayer Company from the Miller Printing Machinery Company. Negotiations for their acquisition in each instance culminated in a written order signed by Marcus-Mayer Company. These orders were in form agreements of sale. They each provided, inter alia, for a selling price payable in installments and stipulated that the vendor should guarantee performance of the machine and that the vendee should execute a chattel mortgage or a bailment lease as collateral security for the deferred installments of the selling price. In each case a bailment lease, regular in form, including the machine in question was subsequently executed. Press No. 621 was included with five others in the lease dated April 1, 1927; with seven others in the lease dated August 2, 1928, and with nine others in the lease dated July 24, 1929.

The total amounts payable under all the leases was $60,000. Marcus-Mayer Company paid $45,000 of this amount and the receivers paid $2,800 additional. The non-payment of the balance is the default relied on by the appellant. The district court referred the petition to a special master who concluded that Marcus-Mayer Company was insolvent when the receivers were appointed, that all the agreements were conditional sales and that the attempted reservation of title in the appellant was void as against the receivers because the agreements were not filed in the prothonotary's office as required by the Uniform Conditional Sales Act (69 P.S. Pa. §§ 402, 403). The district court approved the report of the special master and denied the reclamation petition. Mayer v. Marcus Mayer Co., D.C., 25 F.Supp. 58.

The present appeal followed. It presents for our consideration a controversy arising out of a peculiar doctrine of Pennsylvania law which has been much before the federal courts sitting in that state.[1] That doctrine, which was first announced more than a century ago, briefly stated, is this. When possession of a chattel is delivered under a contract which is in form a bailment lease, the title of the bailor will

[1] Gotthold v. Crompton & Knowles Loom Works, 3 Cir., 4 F.2d 50; Jacquard Knitting Machine Co. v. Vennell, 3 Cir., 59 F.2d 496; In re Heintz-Merkle & Co., 1 F.Supp. 531, D.C.E.D. Pa., affirmed, Brockway Motor Truck Corporation v. Friedman, 3 Cir., 61 F.2d 519; Tompkins v. Harrisburg Auction House, 3 Cir., 63 F.2d 485; In re Miller Vein Coal Co., 3 F.Supp. 607, D.C.W.D. Pa.; Continental Bank & Trust Co. v. Webster Hall Corp., D.C., 4 F.Supp. 337, affirmed, 3 Cir., 66 F.2d 558; In re Guertler, 17 F.Supp. 569, D.C.E.D.Pa.; In re Kamens Quality Markets, 10 F. Supp. 263, D.C.E.D.Pa., reversed, General Motors Acceptance Corporation v. Horton, 3 Cir., 85 F.2d 452; In re American Storage & Moving Co., 15 F. Supp. 950, D.C.E.D.Pa.; In re Stein, 17 F.Supp. 587, D.C.E.D.Pa.; Bradshaw v. General Motors Acceptance Corporation, 19 F.Supp. 993, D.C.M.D.Pa.; In re Clover Drugs, Inc., 21 F.Supp. 107, D.C.E.D.Pa.; Otis Elevator Co. v. Arey-Hauser Co., 22 F.Supp. 4, D.C.E.D.Pa.; Umani v. Clad, 3 Cir., 98 F.2d 128.

be upheld as against the execution creditors of the bailee, even though the contract contains an agreement to pass title to the bailee upon payment of the full amount of hire or rental stipulated therein.[2]

It will be seen that this doctrine permits parties desiring to enter into a deferred payment sale of a chattel to protect the vendor's title pending the payment of the price by delivering possession of the chattel to the vendee under a bailment lease, the vendor receiving the deferred portion of the sale price in the form of hire or rental under the lease. This, as we shall see, is exactly what the doctrine was intended to permit. Its adoption by the Supreme Court of Pennsylvania followed shortly after that court had laid down the rule in the case of Martin v. Mathiot, 14 Serg. & R., Pa., 214, 16 Am. Dec. 491, that a conditional sale of a chattel reserving title in the vendor until payment of the purchase price must be deemed fraudulent and void as against the execution creditors of the vendee in possession. The doctrine was undoubtedly adopted because of the rigor of this rule with its consequent obstruction to normal business transactions.[3]

In 1819 the Supreme Court of Pennsylvania had decided in Clow and another v. Woods, 5 Serg. & R., Pa., 275, 9 Am.Dec. 346, that because of the Statute of 13 Elizabeth c. V., which was in force in Pennsylvania, (see Opinion of the Justices, 3 Bin., Pa., 595), an unrecorded mortgage of chattels with retention of possession was fraudulent and void as to creditors of the mortgagor. This was followed by a similar ruling in 1823 in Babb v. Clemson, 10 Serg. & R., Pa., 419, 13 Am.Dec. 684, which involved an absolute sale of goods

with retention of possession by the vendor. Then in 1826 came the decision in Martin v. Mathiot, supra. A conditional sale contract, therefore, gave no protection to the vendor if his claim of title was opposed by that of an execution creditor of the vendee in possession. The basis for the decision in each of the three cases mentioned was that the one in possession was thereby clothed with such indicia of ownership as to enable him to perpetrate a fraud on innocent third persons.

It was at this time that the Pennsylvania courts began to seek for reasons for avoiding the effect of the ruling in Martin v. Mathiot, supra. In 1831 in Myers v. Harvey, 2 Pen. & W., Pa., 478, 23 Am.Dec. 60, we find the Supreme Court of that state shifting its emphasis from the fact of possession to a query as to whether the parties had arranged for a present or future transfer of title. In that case Chief Justice Gibson referred to the contract involved as providing for a bailment for hire with an additional agreement of sale to take effect upon payment of a sum certain. The terms of the contract are not set out in the opinion. He found from the evidence that the parties entered into a bailment with a superadded agreement to vest the title in the bailee when he should pay a sum certain. The bailment appears to have been a true bailment for use. By a natural transition later cases applied this procedure of splitting the contract into bailment and future sale to contracts which in fact were not true bailments. With the decision in Rowe v. Sharp, 51 Pa. 26, the peculiar Pennsylvania doctrine of bailment leases came into full force.

The use of the bailment relation was approved upon a basis which was in most cases fictional. One who desired to make

[2] Myers v. Harvey, 2 Pen. & W., Pa., 478, 23 Am.Dec. 60; Clark v. Jack, 7 Watts, Pa., 375; Chamberlain et al. v. Smith, 44 Pa. 431, 84 Am.Dec. 461; Rowe v. Sharp, 51 Pa. 26; Crist v. Kleber, 79 Pa. 290; Enlow v. Klein, 79 Pa. 488; Dando v. Foulds, 105 Pa. 74; Wheeler & Wilson Mfg. Co. v. Heil et al., 115 Pa. 487, 8 A. 616, 2 Am.St.Rep. 575; Wertz v. H. W. Collender Co., 9 A. 331, 6 Sad., Pa., 361; Cope v. Singer Mfg. Co., 1 Monag., Pa., 650; Ditman v. Cottrell, 125 Pa. 606, 17 A. 504; Jones v. Wands et al., 1 Pa.Super. 269; Ricker v. Koechling, 4 Pa.Super. 286; Lippincott v. Scott, 198 Pa. 283, 47 A. 1115, 82 Am.St.Rep. 801; Stiles v. Seaton, 200 Pa. 114, 49 A. 774; Porter v. Dun-

can, 23 Pa.Super. 58; Miller v. Douglas, 32 Pa.Super. 158; Link Mach. Co. v. Continental Trust Co., 227 Pa. 37, 75 A. 985; Reading Automobile Co. v. De Haven, 53 Pa.Super. 344.

[3] Keystone Watch Case Co. v. Bank, 194 Pa. 535, 45 A. 328; Thompson, Election of Remedies in Bailment Lease Contracts, 3 Temple Law Quarterly 274; Mueller, Conditional Sales in Pennsylvania Since the Adoption of The Sales Act, 72 U. of P. Law Review 123; Montgomery, The Pennsylvania Bailment Lease, 79 U. of P. Law Review 920; The Pennsylvania Bailment Lease in the Federal Courts, 9 Temple Law Quarterly 426.

a deferred payment sale might preserve his title by insisting upon delivering the chattel under a bailment lease for a rental equal to the deferred payments, to be followed by a bill of sale. On the other hand one who did not resort to the fiction of a bailment but delivered the article to the vendee under an ordinary conditional sale contract found his attempted reservation of title to be ineffective. In this situation we may well expect to find that the fine line between fact and fiction has not always been easy to draw. In this we are not disappointed. The Pennsylvania reports disclose a long series of cases in which the pendulum has swung back and forth, first the fiction being upheld[4] and then the evident fact.[5] From first to last, however, the Pennsylvania courts have upheld the policy of that state to permit the use of bailment leases to preserve the vendor's title in transactions intended, ultimately, at least, to be sales. Indeed this policy appears to have the sanction of the state legislature, which, when it passed the Uniform Conditional Sales Act in 1925 struck out that part of the definition of the phrase "conditional sale" as adopted in the other states which would include "any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract". The legislature evidently intended to assure non-interference with the peculiar Pennsylvania doctrine respecting the use of bailment leases in such transactions.

Although the Pennsylvania courts have not formulated a rule so comprehensive as to reconcile all of the decided cases the task has been partially accomplished in General Motors Acceptance Corp. v. Hartman, 114 Pa.Super. 544, 174 A. 795, where Judge Keller in a most lucid opinion classified the cases in which documents purporting to be bailment leases have not been sustained as such. In that case a creditor of Hartman levied upon an automobile in the debtor's possession. General Motors Acceptance Corporation intervened and successfully maintained its claim to title and ownership of the automobile upon proof that Hartman had possession by reason of a contract which the court construed to be a bailment lease. In distinguishing the Pennsylvania decisions cited by the judgment creditor in support of his contention that he had the right to levy upon the automobile as the property of Hartman the court stated that they fell into the *following* classifications:

(1) Where the written instrument is, on its face and by its terms, a conditional sale rather than a bailment lease.[6]

(2) Where a sale has been made and completed, and a lease is entered into only as collateral security for the protection of the unpaid purchase price.[7]

(3) Where a sale has been made and completed, and possession delivered, and

4 Goss Printing Press Co. v. Jordan, 171 Pa. 474, 32 A. 1031; Keystone Watch Case Co. v. Bank, 194 Pa. 535, 45 A. 328; Stiles v. Seaton, 200 Pa. 114, 49 A. 774; Byers Machine Co. v. Risher, 41 Pa.Super. 469; Michael v. Stuber, 73 Pa.Super. 390; Federal Sales Co. v. Kiefer, 273 Pa. 42, 116 A. 545; Schmidt v. Bader, 284 Pa. 41, 130 A. 259; Stern & Co. v. Paul et al., 96 Pa.Super. 112; General Motors Acceptance Corp. v. Hartman et al., 114 Pa.Super. 544, 174 A. 795; Kindig et al. v. Wertz, Admx., 116 Pa.Super. 456, 176 A. 769; Judson C. Burns, Inc., v. Weinberg, 119 Pa. Super. 571, 181 A. 460; Decker v. Williams, 130 Pa.Super. 100, 196 A. 910; and cases cited in note 2.

5 Stadtfeld v. Huntsman & Co., 92 Pa. 53, 37 Am.Rep. 661; Brunswick & Balke Co. v. Hoover, 95 Pa. 508, 40 Am.Rep. 674; Forrest v. Nelson, 108 Pa. 481; Dearborn v. Raysor, 132 Pa. 231, 20 A.

690; Sumerson v. Hicks, 134 Pa. 566, 19 A. 808; Farquhar v. McAlevy, 142 Pa. 233, 21 A. 811, 24 Am.St.Rep. 497; Ott v. Sweatman, 166 Pa. 217, 31 A. 102; Morgan-Gardner Electric Co. v. Brown, 193 Pa. 351, 44 A. 459; Kelly Springfield Road Roller Co. v. Spyker, 215 Pa. 332, 64 A. 546; Bowersox v. Weigle & Myers, 77 Pa.Super. 367; Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650; Bank of Secured Savings v. Rudolph et al., 83 Pa.Super. 439; Leatherman v. Moyer, 104 Pa.Super. 363, 157 A. 622; Bowser & Co., Inc., v. F. M. & I. Co., 305 Pa. 459, 158 A. 170.

6 Stadtfeld v. Huntsman, 92 Pa. 53, 37 Am.Rep. 661; Ott v. Sweatman, 166 Pa. 217, 31 A. 102; Bowser & Co., Inc., v. F. M. & I. Co., 305 Pa. 459, 158 A. 170.

7 Brunswick & Balke Co. v. Hoover, 95 Pa. 508, 40 Am.Rep. 674.

subsequently the parties attempt to change it into a bailment.[8]

(4) Where the lease is attempted to be made by one not in possession of the property leased—as where A sells and delivers a car to B, and the unpaid purchase money is sought to be secured by a lease to B from C, who never had possession of the car.[9]

(5) Where the owner of personal property borrows money on it and attempts to secure the lien by executing a bill of sale to the lender, and the latter executes a bailment lease back to the owner, without any change of possession.[10]

In cases falling into each of the above classes the courts have denounced the use of the bailment lease as sham, have looked through the form to the substance of the transaction.

On the other side of the line are those cases, such as the Hartman case itself, where possession of a chattel is given upon the signing of a bailment lease, valid in form, and the parties have not already made and completed a conditional sale of the chattel which is the subject of the bailment. In these cases the contract will be sustained at its face value and in accordance with its form as a bailment even though the original intention of the parties was to make a deferred payment sale and their present intention is that title shall pass to the vendee on compliance with the conditions of the lease. As we have already pointed out the bailment in such circumstances is little more than a legal fiction and what the parties really intend is a sale upon condition that the title shall be reserved until payment of the purchase price. However, the vendor, prior to the adoption of the Uniform Conditional Sales Act in Pennsylvania, might not safely make such a sale directly in view of Martin v. Mathiot, supra, and the cases following

it. The law of Pennsylvania accordingly stepped in, as we have seen, to protect the intending conditional vendor by upholding the fiction.

Our review of its origin shows that this doctrine was adopted upon grounds of public policy but the courts have not always frankly recognized this fact. In rationalizing the protection it has extended to intending conditional vendors they have suggested that the use of a bailment lease form under such circumstances rebuts any presumption, which might arise from the owner's original intention to make a sale, that he was willing to risk his title to the chattel upon the credit of the purchaser.[11] They have said that the form into which the parties have cast their transaction will in such a case be sustained[12] and the parol evidence rule has been invoked.[13]

The dividing line between the cases in which bailment leases have been upheld and those in which they have been denied validity may be difficult to draw. It is clear, however, that on the one side are those transactions in which preliminary negotiations and oral understandings with regard to the proposed conditional sale of a chattel have resulted in the signing of a bailment lease of it by the owner and the intending purchaser under and subsequent to which possession of the chattel is transferred by the former to the latter. On the other side of the line are the five classes of cases mentioned in the Hartman case and described above. In the former class of cases the Pennsylvania courts have uniformly upheld the bailment lease, if valid in form, and have refused to consider evidence that the actual intention of the parties was to make a sale and not to create a bailment relation. They have gone further than this. They have ignored indications in the written agreement itself that it was not in fact what it purported to be. Thus

[8] Morgan-Gardner Electric Co. v. Brown, 193 Pa. 351, 44 A. 459; Com. v. Deibert, 106 Pa.Super. 497, 163 A. 68; See, however, Michael v. Stuber, 73 Pa.Super. 390, as to the right to do this, where rights of creditors are not involved, or have not attached.

[9] Bowersox v. Weigle & Myers, 77 Pa. Super. 367; Bank of Secured Savings v. Rudolph, 83 Pa.Super. 439; Commercial Banking Corp. v. Meade, 104 Pa.Super. 447, 159 A. 180.

[10] Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650.

[11] Rowe v. Sharp, 51 Pa. 26; Goss Printing Press Co. v. Jordan, 171 Pa. 474, 32 A. 1031; Federal Sales Co. v. Kiefer, 273 Pa. 42, 116 A. 545.

[12] Brown Bros. v. Billington, 163 Pa. 76, 29 A. 904, 43 Am.St.Rep. 780; Link Mach. Co. v. Continental Trust Co., 227 Pa. 37, 75 A. 985; Schmidt v. Bader, 284 Pa. 41, 130 A. 259; Miller v. Douglas, 32 Pa.Super. 158.

[13] Michael v. Stuber, 73 Pa.Super. 390; Schmidt v. Bader, 284 Pa. 41, 130 A. 259; General Motors Accep. Corp. v. Hartman et al., 114 Pa.Super. 544, 174 A. 795.

they have construed an agreement as a bailment lease even though it contained no provision for the return of the chattel;[14] failed to stipulate a definite term;[15] did not grant an option to buy;[16] was self entitled a "Conditional Sales Contract";[17] provided for installment payments by promissory notes.[18]

Our consideration of this subject leads to but one conclusion. The Supreme Court of Pennsylvania, construing the Statute of 13 Elizabeth c. V. had held the secret reservation of title in a conditional sale void as to the vendee's creditors. The policy of the state required that such transactions, customary in business, be permitted in some form. The courts of the state accordingly have offered to the merchants of the state a legal talisman, the bailment lease, which when employed according to the rules, will protect their titles from all attacks by creditors of their customers. We think that this realistic view of the Pennsylvania bailment lease doctrine must be adopted if the rule of property which it embodies is to be certain and enforcible. To attempt to justify the doctrine on any more logical ground will lead, as it has in the past, to interminable controversy and will provide no guide to a certain result. To one who has extended credit to a printer in possession of a printing press a secret claim of title by the dealer who furnished the press does not appear to be any the less in fraud of his rights because it is founded upon a bailment lease instead of a conditional sale contract.

■ We must, of course, bear in mind that the federal courts in Pennsylvania are bound to follow the rule laid down by the state courts. Our duty is merely to ascertain what the rule is and not to declare what in our judgment it ought to be. In General Motors Acceptance Corpora-

tion v. Horton, 3 Cir., 85 F.2d 452 we were called upon to determine whether the contract there to be construed was a bailment lease or a conditional sale. Although it seemed obvious to us that the transaction was in fact a conditional sale we held that, construed in the light of the Pennsylvania cases to which we have referred, the contract which the parties had signed, being in good bailment lease form, was enforcible as such without regard to the fact that a sale was contemplated. We reached the same conclusion in Umani v. Clad, 3 Cir., 98 F.2d 128.

■ We now turn to the consideration of the facts of the present case. Applying what we believe to be the appropriate tests we find that press No. 621 was the subject of a bailment lease, valid in form, and that there is no evidence in the record of a prior consummated sale. The reclamation petition should, therefore, have been allowed as to this press. In each of the other transactions, however, a sale had been made and completed upon the execution of the order and the delivery of the press. By the express terms of the order the lease was executed only as collateral security for the unpaid purchase price. Judge Keller's second class, namely, those cases where a sale has been made and completed, and a lease is entered into only as collateral security for the protection of the unpaid purchase price, clearly describes what occurred in the case of the eleven presses. We therefore conclude that as to them the district court properly dismissed the reclamation petition because the contracts were conditional sales, ineffective because not filed.

The decree of the district court is reversed as to press No. 621. In all other respects it is affirmed.

---

[14] Enlow v. Klein, 79 Pa. 488; Edwards' Appeal, 105 Pa. 103; Jones v. Wands et al., 1 Pa.Super. 269; Stiles v. Seaton, 200 Pa. 114, 49 A. 774; Porter v. Duncan, 23 Pa.Super. 58; Federal Sales Co. v. Kiefer, 273 Pa. 42, 116 A. 545; General Motors Accep. Corp. v. Hartman et al., 114 Pa.Super. 544, 174 A. 795; Kindig et al. v. Wertz, 116 Pa. Super. 456, 176 A. 769.

[15] Enlow v. Klein, 79 Pa. 488; Ed-

wards' Appeal, 105 Pa. 103; Stiles v. Seaton, 200 Pa. 114, 49 A. 774.

[16] Rowe v. Sharp, 51 Pa. 26.

[17] Decker v. Williams, 130 Pa.Super. 100, 196 A. 910.

[18] Ditman v. Cottrell, 125 Pa. 606, 17 A. 504; Lippincott v. Scott, 198 Pa. 283, 47 A. 1115, 82 Am.St.Rep. 801; Byers Machine Co. v. Risher, 41 Pa. Super. 469.